# IN THE SUPREME COURT OF IOWA

No. 10–0363

Filed August 6, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**STEPHEN J. LICKISS,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends attorney receive a three-month suspension. **LICENSE SUSPENDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Stephen J. Lickiss, Altoona, pro se.

**TERNUS, Chief Justice.**

This matter comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, Stephen J. Lickiss, violated ethical rules in four probate matters by neglecting these matters, failing to respond to clients' inquiries for information, taking probate fees without prior court approval, failing to notify his clients that he had ceased to represent them, and failing to respond to the board's inquiries. The grievance commission found Lickiss violated the Iowa Rules of Professional Conduct and recommended a three-month suspension. Upon our respectful consideration of the findings of fact, conclusions of law, and recommendation of the commission, we find Lickiss committed several ethical violations and suspend his license to practice law indefinitely with no possibility of reinstatement for three months.

## I. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 281 (Iowa 2009). The commission's findings and recommendations are given respectful consideration, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 55 (Iowa 2009). The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006). As frequently stated, " '[t]his burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case.' " *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)). Upon proof of misconduct, the court may impose a

lesser or greater sanction than that recommended by the commission. *Id.*

## II. Prior Proceedings and Factual Background.

Lickiss was admitted to the Iowa bar in 1995. At the times relevant to this disciplinary proceeding, he practiced as a sole practitioner. Prior to undertaking the probate matters that are the subject of this disciplinary action, Lickiss had no experience handling adult conservatorships, adult guardianships, or estates.

On January 15, 2009, the board filed its amended complaint against Lickiss, alleging misconduct and ethical violations in four probate matters. Lickiss failed to answer and failed to respond to other inquiries by the board. As a result, the commission ruled the allegations in the amended complaint were deemed admitted pursuant to Iowa Court Rule 36.7. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 378 (Iowa 2007). Based on Lickiss's implied admissions, the hearing on the board's complaint addressed only the issue of the proper discipline. A related matter that arose at the hearing was whether and to what extent Lickiss's prior discipline should affect the current proceeding and the appropriate sanction. We now set forth the circumstances regarding the four probate matters, Lickiss's prior discipline, and Lickiss's evidence of mitigating circumstances.

**A. Mina Shelton Guardianship and Conservatorship.** In October 2005, Lickiss opened a guardianship and conservatorship for Mina Shelton ("Mina"). Mina's daughter, Irene Henderson, and son, Danny Shelton, were named co-guardians and co-conservators. Lickiss did not secure the surety bond ordered by the court, even though he assured Henderson he would. In addition, Lickiss was paid $1176.48 for his services without prior approval from the probate court as required by

statute.[1] When the reports required in guardianships and conservatorships were not filed, Lickiss received notice of and failed to cure numerous delinquencies. He also failed to respond to the board's inquiries and his clients' inquiries about these delinquencies. As a result of Lickiss's failure to act, Henderson hired a new attorney in December 2007. She also filed a request for an extension of time to deal with the delinquencies, in which she stated: "I have tried numerous times to reach [Lickiss] by telephone and have not received any calls from him. It is my understanding that he is still listed as the attorney of record in this matter." Although Lickiss eventually closed his practice, he neither withdrew from the case nor informed his clients that he was no longer acting as their attorney.

Based on this series of events, the board alleged and Lickiss admitted violations of the following provisions of the Iowa Rules of Professional Conduct: 32:1.1 ("A lawyer shall provide competent representation to a client."), 32:1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."), 32:1.4(a)(3) ("A lawyer shall . . . keep the client reasonably informed about the status of the matter[.]"), 32:1.4(a)(4) ("A lawyer shall . . . promptly comply with reasonable requests for information[.]"), 32:1.5(a) ("A lawyer shall not . . . charge . . . or collect [a fee in violation of] any restrictions imposed by law."), 32:3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."), 32:3.4(c) ("A lawyer shall not . . . knowingly disobey . . . the rules of a tribunal[.]"), 32:8.1(b)

---

[1]Henderson testified that $1053.98 was charged for work that Lickiss did when he first took the case and the remaining $122.50 was charged in connection with work that Lickiss performed or partly performed in connection with a June 2006 delinquency notice. At the hearing, the board did not contend Lickiss had not earned these fees or that these fees were unreasonable. The board only claimed the fees were collected without court authorization.

("[A] lawyer . . . shall not . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]"), and 32:8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]").[2]

**B. Howard Shelton Guardianship and Conservatorship.** Lickiss established a guardianship and conservatorship for Howard Shelton ("Howard") contemporaneously with doing so for Howard's wife, Mina. Henderson and Danny Shelton were named co-guardians and co-conservators. Lickiss's conduct with respect to Howard's guardianship and conservatorship mirrored his conduct with respect to Mina's guardianship and conservatorship. As a result, the board alleged and Lickiss admitted he violated the same ethical rules enumerated in relation to the Mina Shelton matter.

**C. Maxine Baird Guardianship and Conservatorship.** On February 9, 2006, Lickiss filed a petition establishing a guardianship and conservatorship for Maxine Baird. Lark Eckerman and Sandra Stotts, Baird's daughters, were named co-guardians and co-conservators. Despite telling his clients he would secure the surety bond required by the court, Lickiss failed to do so. As of June 2008, Lickiss had also received three delinquency notices and had failed to cure the delinquencies. In addition, he did not respond to the board's inquiries regarding these notices. Although Eckerman attempted to reach Lickiss by calling the telephone numbers Lickiss and the clerk of court had given her for him, she received recordings saying the numbers were not in

---

[2]The board alleged and Lickiss admitted a violation of rule 32:8.4(a) ("It is professional misconduct for a lawyer to . . . violate . . . the Iowa Rules of Professional Conduct[.]"). We do not consider a violation of this rule as a separate ethical infraction, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010), and so give it no further consideration.

service. With assistance from the clerk of court, Eckerman was eventually able to address the delinquencies and file the necessary reports on her own.

Baird died in March 2009. At the time of the hearing in this disciplinary action, Eckerman had been unable to reach Lickiss to obtain a copy of Baird's will. At the hearing, Lickiss promised to get the will to Eckerman. Based on these uncontroverted facts, the board alleged and Lickiss admitted he violated the same ethical rules enumerated in relation to the Mina Shelton matter.

**D. Richard McGrean Estate.** On April 7, 2006, Lickiss filed a petition for administration of Richard McGrean's estate. Lickiss failed to publish and mail notices regarding the estate, failed to file an inventory, and failed to file interlocutory reports. Several delinquency notices were sent to Lickiss from 2006 through 2008, but he did not cure the delinquencies. Consequently, the board alleged and Lickiss admitted he violated the same ethical rules enumerated in relation to the Mina Shelton matter.

**E. Lickiss's Prior Discipline.** After Lickiss was notified of the delinquencies in the Shelton matters on June 1, 2006, these delinquencies were reported to the disciplinary authorities. *See* Iowa Code § 633.32 (2005) (requiring clerk of court to report delinquent inventories and reports to the presiding judge); Iowa Ct. R. 7.6(2), (3) (requiring clerk of court to submit section 633.32 reports to the state court administrator, who must then transmit a list of attorneys who have ignored a notice of delinquency to the disciplinary board). The board wrote to Lickiss regarding these delinquencies on October 11, 2006, and again on November 14, 2006, but received no response.

In January 2007, the board initiated the disciplinary process to address the probate delinquencies in the Shelton proceedings. Thereafter, the board became aware of four additional delinquency notices sent by the clerk in the Shelton matters and a notice of delinquency issued in the McGrean estate. Following the board's second notice to Lickiss of the January 2007 disciplinary proceeding, Lickiss finally responded on February 23, 2007, but took no steps to rectify the delinquencies.

On June 14, 2007, the board issued a public reprimand of Lickiss, which this court published on September 21, 2007. The board's reprimand was based on Lickiss's failure to act with reasonable diligence and promptness in the Shelton and McGrean matters in violation of rule 32:1.3. Specifically, the board was acting in response to four delinquency notices in the Mina Shelton matter, four delinquency notices in the Howard Shelton matter, and one delinquency notice in the McGrean matter. The 2007 reprimand did not address Lickiss's failure to secure surety bonds or his collection of fees without prior court approval in the Shelton matters, as that conduct was not yet known by the disciplinary office.

After the 2007 reprimand, the ethical infractions that are the subject of the present disciplinary action came to the board's attention, and notice of these complaints was sent to Lickiss on two separate occasions. When Lickiss failed to respond, the board filed a certificate under Iowa Court Rule 34.7(3) on October 28, 2008, advising this court that Lickiss had failed to respond to the board's second notice of complaints. On the same day, the Iowa Supreme Court Clerk of Court notified Lickiss his license would be suspended unless he acted within twenty days to cause the board to withdraw its certificate. Lickiss did

not respond. On November 24, 2008, pursuant to rule 34.7(3), this court issued an order of temporary suspension of Lickiss's license to practice law. Lickiss's license remained suspended until April 2009, when the board withdrew its certificate based on Lickiss's participation in the hearing in this disciplinary proceeding, which the board considered a response, albeit a tardy one, to its complaint. We reinstated Lickiss's license on April 14, 2009, and his license has remained in active status since that time.

**F. Lickiss's Evidence of Mitigating Circumstances.** At the hearing, Lickiss candidly admitted his misconduct and recognized that he was not suited to handle probate matters as a sole practitioner. He acknowledged that his foray into private practice as a sole practitioner was a mistake. He also detailed personal circumstances that impacted his ability to handle his law practice. Lickiss was struggling with the breakup of his marriage; loss of the opportunity to adopt foster children who had been living with him; serious financial difficulties, including the imminent foreclosure of the mortgage on his home; and depression. Lickiss was taking medication for his depression at the time of the hearing.

Lickiss testified that, in the spring of 2008, he voluntarily ceased his private practice, but did not formally withdraw from these probate matters and did not notify his clients that he had discontinued his practice. Lickiss testified that he did not withdraw from these proceedings because he was unaware that he was required to do so. He asserts he does not intend to return to private practice, but hopes to find a position as a prosecutor, a role he had handled successfully for over nine years prior to starting his own practice.

### III. Ethical Violations.

**A. Neglect.** As we have frequently stated, neglect involves "a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004). In each of the four matters at issue here, Lickiss consistently failed to perform the obligations he assumed as an attorney, including failing to secure the necessary surety bonds, publish the required notices, file the required reports, and cure the numerous delinquencies. We conclude he violated rule 32:1.1 (requiring competent representation), rule 32:1.3 (requiring reasonable diligence and promptness), and rule 32:3.2 (requiring lawyer to make reasonable efforts to expedite litigation consistent with his client's interests). *Wagner*, 768 N.W.2d at 283–87. These same actions delayed the administration of the conservatorship, guardianship, and estate proceedings and required otherwise unnecessary administrative oversight by the clerk of court and judicial officers. As a result, Lickiss's conduct was prejudicial to the administration of justice in violation of rule 32:8.4(d). *Rickabaugh*, 728 N.W.2d at 380–81 (holding failure to file interlocutory reports in estates and receiving delinquency notices as a result prejudiced the administration of justice); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 123 (Iowa 1999) (holding acts that "hampered the efficient and proper operation of the courts" constituted conduct prejudicial to the administration of justice).

**B. Probate Fees.** Iowa law prohibits an attorney from collecting fees in probate cases without a prior court order approving the fees. Iowa Code §§ 633.197, .198. Taking probate fees without prior approval

by the court violates rule 32:1.5(a) (prohibiting fees imposed or collected in violation of law). *Wagner*, 768 N.W.2d at 283. Thus, Lickiss violated rule 32:1.5(a) in collecting fees in the Shelton matters without court approval.

**C. Failing to Respond to Inquiries.** Lickiss did not keep his clients informed with respect to the status of their legal matters, did not respond to their attempts to reach him, and did not tell them he had closed his office and would no longer represent them. This conduct violated rule 32:1.4(a)(3) (requiring lawyer to keep client reasonably informed) and rule 32:1.4(a)(4) (requiring lawyer to promptly comply with reasonable requests for information). In addition, when Lickiss failed to respond to the board's inquiries in this disciplinary proceeding, he violated rule 32:8.1(b) (requiring response to demand for information by disciplinary authority). *Casey*, 761 N.W.2d at 60 (failure to respond to board's inquiries in probate matter violates rule 32:8.1(b)).

**IV. Sanction.**

**A. Board Recommendation.** The commission recommends that we suspend Lickiss's license for three months. The commission also suggests that, prior to reinstatement, Lickiss provide an evaluation from a licensed health care professional verifying his fitness to practice law. The commission further recommends that, prior to reinstatement, Lickiss provide proof that he (1) has returned all wills and client materials to clients for whom he provided estate planning and probate services prior to the date of his suspension, (2) has attended continuing legal education in estate planning and probate law, (3) has developed a system to track and meet all reporting deadlines, and (4) has associated with an attorney experienced in probate practice to mentor him as necessary.

**B. Relevant Factors and Considerations.** " 'There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case.' " *Wagner*, 768 N.W.2d at 287 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007)); *accord Casey*, 761 N.W.2d at 61. In tailoring the sanction to the particular circumstances of each case,

> "we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Casey*, 761 N.W.2d at 61 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008)); *accord Wagner*, 768 N.W.2d at 287.

**C. Appropriate Discipline.** When attorney misconduct involves neglect, sanctions have typically ranged from a public reprimand to a six-month suspension. *Casey*, 761 N.W.2d at 61. " 'Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006)). This case does not involve an isolated case of neglect. Lickiss engaged in multiple instances of neglect in four probate matters such that he failed to properly advance his clients' interests. In addition, he took probate fees before obtaining the required court orders, and he failed to respond to his clients' and the board's inquiries.

A review of two prior disciplinary cases involving like circumstances is instructive. In *Wagner*, 768 N.W.2d at 282–83, 288, 289, a disciplinary proceeding involving one probate case, among other matters, we imposed a six-month suspension for misconduct consisting of neglect, misrepresentations to the court, premature taking of probate fees, failure to deposit fees in a trust account, failure to promptly return unearned fees, failure to respond to the board, and having a prior public reprimand for neglect and another public reprimand for misrepresentation. In *Casey*, 761 N.W.2d at 63, a disciplinary proceeding involving a probate matter and a personal injury case, we imposed a three-month suspension for neglect, misrepresentation to the court, premature taking of probate fees, and failure to respond to the board's inquiries.

**D. Prior Discipline.** In choosing the appropriate sanction in this case, we consider an aggravating factor: Lickiss's 2007 public reprimand for identical occurrences of neglect. Lickiss's prior discipline poses the rather unique circumstance of having occurred in three of the same cases that are the subject of this disciplinary proceeding: the Shelton matters and the McGrean estate. This court has held that, when a lawyer has already been sanctioned for similar, relatively contemporaneous misconduct, we may refrain from imposing additional discipline for newly discovered ethical violations if we conclude that a more severe sanction would not have been imposed had the newly discovered ethical violations been known when the initial discipline was ordered. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 309 (Iowa 2009). We conclude this principle does not apply here.

It is true that some of the ethical infractions that are the subject of this disciplinary proceeding occurred concurrently with the probate

delinquencies that were the basis for the 2007 reprimand. Significantly, however, these infractions, which were unknown at the time of that reprimand, are of a different character than simple neglect. In addition to neglecting his clients' legal matters by ignoring probate delinquency notices, Lickiss failed to secure the necessary security bonds in the three conservatorships and prematurely took probate fees in the Shelton matters. We cannot conclude that this additional misconduct would not have warranted a more severe sanction than the public reprimand given by the board for Lickiss's failure to respond to delinquency notices had the board been aware of these other ethical infractions in 2007.

In addition, much of the misconduct that is the subject of the current complaint, including numerous instances of neglect, occurred after the prior reprimand. The prior reprimand was imposed in response to one delinquency notice issued in the McGrean estate in 2006 (there were four subsequent delinquency notices) and to four delinquency notices issued in 2006 in each of the Shelton matters (there were four additional delinquency notices in each of those cases). In addition, the 2007 reprimand did not address any of the 2008 Baird delinquencies. Because the 2007 reprimand did not address Lickiss's behavior subsequent to 2006, an additional sanction is appropriate for his later misconduct.

We think the prior reprimand constitutes a particularly aggravating circumstance because one would expect that the initial discipline for failing to address the probate delinquencies would have prompted the respondent to attend to his clients' legal matters or obtain the assistance of an attorney who would attend to these matters. Therefore, in determining the proper sanction here, we do not consider Lickiss's failure in 2006 to cure the delinquencies that were the focus of

the prior reprimand, but we do consider that prior reprimand as an aggravating circumstance. *See Wagner*, 768 N.W.2d at 288 (aggravating circumstances included having a prior disciplinary record consisting of a public reprimand for neglect and another public reprimand for misrepresentation); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jones*, 606 N.W.2d 5, 9 (Iowa 2000) (prior public reprimand considered aggravating circumstance).

**E. Voluntary Cessation of Practice and Temporary Suspension.** At the hearing, Lickiss argued the period during which he voluntarily refrained from practicing law beginning in the spring of 2008 should be credited toward any suspension we impose here. Under our cases, however, a period of voluntary cessation of practice will not be allowed as a credit toward a suspension ordered by this court. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 636 N.W.2d 86, 89 (Iowa 2001). As we have stated,

> in some cases we have given credit for the time an attorney has been actually suspended under a temporary order by this court. For purposes of retroactive commencement of a suspension, we do not equate a voluntary cessation of practice with a temporary suspension.
>
> Under our present rules, an attorney formally suspended by this court is required to take certain steps to assure his complete disengagement from all pending matters, . . . and to file proof of his compliance with those requirements . . . . In the case of a voluntary cessation of practice, there is no such procedure for verification and therefore no means of determining that the discontinuation of practice was complete and continuous. Treating a voluntary cessation in the same way as a suspension could lead to future problems regarding whether the attorney has in fact ceased to practice.

*Comm. on Prof'l Ethics & Conduct v. McDermott*, 405 N.W.2d 824, 825 (Iowa 1987) (citations omitted). Thus, we will not credit the period of

Lickiss's voluntary cessation of practice toward any suspension we order here.

We next consider the impact of this court's temporary suspension of Lickiss. Lickiss's temporary suspension under rule 34.7(3) was a consequence of his failure to respond to the board's inquiries. Based on the length of that suspension (over four months), we conclude he has been adequately disciplined for that misconduct, and therefore, we will not consider his violation of rule 32:8.1(b) (requiring response to demand for information by disciplinary authorities) in fashioning a sanction here. We decline to give Lickiss a credit for his period of temporary suspension against any suspension imposed here because the suspensions are not duplicative. First, because we have decided to impose no additional discipline for Lickiss's violation of rule 32:8.1(b), the sanction we impose here is not for the same misconduct that warranted the temporary suspension. Secondly, the purpose of the temporary suspension is more than disciplinary; it is also intended to prompt a response to the board's inquiries so the disciplinary action may proceed in a timely and informed fashion.[3]

**F. Depression and Voluntary Practice Limitations.** In fashioning an appropriate sanction, we take into account Lickiss's depression as a mitigating circumstance. While illnesses do not excuse misconduct, they can moderate the discipline we impose. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008) (holding depression a mitigating circumstance in a disciplinary

---

[3]The coercive nature of the suspension is demonstrated by the fact that the length of a temporary suspension under rule 34.7 is essentially up to the respondent. Once the attorney responds to the board's inquiries, the board is required to withdraw its certificate or provide an alternate basis for continuing the suspension, *see* Iowa Ct. R. 34.7(3)(*d*), and upon the board's withdrawal of the certificate, the court must "immediately reinstate the attorney's license to practice law," *id.* r. 34.7(3)(*f*).

case that resulted in a one-year suspension for neglect, client trust account violations, and dishonesty to client); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 96 (Iowa 2006) (holding severe depression and anxiety constituted mitigating circumstances considered in disciplinary action resulting in two-year suspension for multiple acts of misconduct, including neglect, misrepresentation, and client trust account violations).

In addition, we view Lickiss's voluntary cessation of law practice after receiving the public reprimand to be a remedial effort to address his personal and professional problems. Lickiss testified that he intends to forego private practice, including probate work, in the future and return to a career as a prosecutor. Like illness, voluntary remedial efforts to limit a respondent's practice of law to areas of competence do not excuse misconduct. Nevertheless, we consider such remedial efforts as a mitigating circumstance. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Scheetz*, 549 N.W.2d 828, 833 (Iowa 1996) (imposing discipline notwithstanding respondent's voluntary remedial efforts to limit practice to areas of competence, but considering such efforts in deciding to impose discipline of public reprimand).

**G. Discipline.** After considering the number and nature of Lickiss's ethical infractions as well as the aggravating and mitigating factors present in this case, we agree with the commission that a three-month suspension is appropriate. *See Casey*, 761 N.W.2d at 63 (imposing three-month suspension for similar misconduct). To ensure that the public is adequately protected in the event Lickiss seeks reinstatement, we require that any application for reinstatement be supported by an evaluation from a licensed health care professional demonstrating Lickiss's fitness to practice law. *See McCann*, 712 N.W.2d

at 97 (requiring evaluation of respondent who suffered from depression and anxiety). We also concur in the commission's recommendation that Lickiss be required to return all client property in his possession, including wills, prior to reinstatement.

We do not adopt the commission's suggestion that, prior to reinstatement of his law license, Lickiss must submit evidence of completing appropriate continuing legal education. Although Lickiss admitted the board's allegation that he failed to provide competent representation, he testified that he does not intend to engage in probate work in the future, and he has already abandoned the private practice of law. Therefore, it would be impractical to ascertain the appropriate content of any continuing legal education requirement.

In addition, we do not adopt the commission's recommendation that Lickiss associate with an experienced probate practitioner or that he submit evidence that he has developed a system to track and meet all reporting deadlines. As we have noted in prior cases, "neither the court nor the bar has effective machinery in place for . . . supervision" of such requirements. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 819 (Iowa 2007); *see also Comm. on Prof'l Ethics & Conduct v. Mahoney*, 402 N.W.2d 434, 435 (Iowa 1987) (lawyer was reprimanded and placed under supervision of his law partner; lawyer later withdrew from firm following which former partner discontinued supervision and lawyer again engaged in unethical conduct).

Although we have not ordered protective measures such as continuing legal education or adequate clerical and professional support, we expect Lickiss to avail himself of whatever resources are necessary to allow him to practice in compliance with our rules of professional conduct. We caution him that, in the event he is reinstated, he should

consider a career that will allow him to steer clear of any future ethical violations.

## V. Conclusion.

Because Lickiss has violated ethical rules by neglecting four probate matters, failing to respond to clients' inquiries for information, taking probate fees without prior court approval, and failing to notify his clients that he would no longer be representing them, we suspend Lickiss's license to practice law indefinitely with no possibility of reinstatement for three months. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires notification of clients as outlined in Iowa Court Rule 35.22. Prior to any reinstatement, Lickiss must provide an evaluation from a licensed health care professional verifying his fitness to practice law. Costs are taxed to Lickiss pursuant to Iowa Court Rule 35.26. Reinstatement shall not be ordered until all costs are paid. Iowa Ct. R. 35.12(1).

**LICENSE SUSPENDED.**