# IN THE SUPREME COURT OF IOWA

No. 17–0420

Filed September 15, 2017

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KIM MARLOW WEST,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends a suspension of an attorney's license to practice law for violations of ethical rules. **LICENSE SUSPENDED.**

Tara van Brederode and Susan A. Wendel, Des Moines, for complainant.

Kim Marlow West, Des Moines, pro se.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against an attorney alleging multiple violations of the Iowa Rules of Professional Conduct in connection with the probate and closing of an estate. A division of the Iowa Supreme Court Grievance Commission found the respondent's conduct violated the rules. The commission recommended we order the attorney to refund half of the attorney fee he received, personally pay the attorney's fee and court costs to close the estate, and suspend his license to practice law with no possibility of reinstatement for a period of six months. The Board urges us to adopt the recommendation. On our de novo review, we find the attorney violated provisions of our rules, which requires us to impose sanctions. Accordingly, we suspend the attorney's license to practice law for a period of sixty days from the date of filing this decision.

## I. Scope of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 662 (Iowa 2017). The Board has the burden to prove ethical violations by a convincing preponderance of the evidence. *Id.* A convincing preponderance of the evidence is more than the typical preponderance standard in a civil case but less than proof beyond a reasonable doubt. *Id.* "While we respectfully consider the commission's findings and recommendations, they are not binding on us." *Id.*

## II. Findings of Fact.

On September 14, 2016, the Board filed a complaint against Kim Marlow West alleging various ethical violations in connection with the estate of Betty Maxine Rumme. The Board amended its complaint twice. West responded to the Board's complaints by admitting all of the

Board's allegations. On December 1, the Board and West filed a stipulation pursuant to Iowa Court Rule 36.16, wherein the parties agreed to the facts, rule violations, and mitigating and aggravating circumstances.

Facts admitted in an answer are "deemed established," and a stipulation of facts is binding on the parties. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013). We construe a factual stipulation "with reference to its subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 803–04 (Iowa 2010) (quoting *Graen's Mens Wear, Inc. v. Stille-Pierce Agency*, 329 N.W.2d 295, 300 (Iowa 1983)). However, we are not "bound by a stipulation of a violation or of a sanction in reaching our final decision in a disciplinary case." *Id.* at 804; *accord* Iowa Ct. R. 36.16(3). The Iowa Constitution and our court rules solely vest the function of determining violations and sanctions for such violations with our court. *See Gailey*, 790 N.W.2d at 804.

Using the stipulation of the parties, together with our de novo review of the record, we make the following findings of fact. West has practiced law in Iowa since 1983. He worked in the Cerro Gordo, Story, and Polk County public defender offices until approximately 2002. In 2004, West began a solo private practice in criminal law, which he continues today at a substantially reduced volume.

On October 16, 2007, William Rumme hired West to handle a probate matter for the estate of his mother Betty Maxine Rumme. William Rumme paid West an attorney fee of $1000, which he subsequently deposited without court authorization as required by statute. West filed a petition for probate of the will and obtained an

order admitting the will of Betty Maxine Rumme to probate. West then failed to file the estate inventory, and on June 1, 2008, he received a notice of delinquency from the district court clerk's office. On August 22, West filed an application for extension of time to file the estate inventory, which the district court granted. On August 29, West filed the estate inventory. On June 2, 2009, West received a notice of delinquency after he failed to file an interlocutory report for the estate. West prepared and filed the interlocutory report on August 13. West subsequently failed to file the second notice of publication and failed to file the final report. The clerk sent several additional delinquency notices to West from 2014 through 2016, but he did nothing to cure the delinquencies. Further, the Board sent numerous notices and requests regarding the probate delinquencies from 2014 through 2015, to which the Board received minimal or no response from West.

West also failed to communicate with the executor of the estate, causing such frustration that the executor attempted to file a final report and communicate directly with the probate judge. West never contacted the executor of the estate to explain what was going on with the estate or to inform him of how the probate matter was progressing. The executor of the estate attempted to contact West about the delinquency notices. Nevertheless, West failed to keep the executor of the estate informed with respect to the status of the probate matter and failed to respond to the executor's attempt to reach him.

Prior to undertaking the probate matter that is the subject of this disciplinary action, West had no experience handling estates and did not take any steps to understand that area of the law or follow through in pursuing outside expertise. Because of the lack of proper administration, the estate remains open. Based on West's handling of

the estate, the Board alleged and West admitted violations of the Iowa Rules of Professional Conduct related to providing competent representation, acting diligently, failing to respond to a disciplinary authority, engaging in conduct prejudicial to the administration of justice, violating a fee restriction imposed by law, and keeping a client reasonably informed. We discuss additional facts as needed in the violations and sanction sections of this opinion.

### III. Ethical Violations.

**A. Competence—Rule 32:1.1.** This rule states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Iowa R. Prof'l Conduct 32:1.1. "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 598 (Iowa 2011) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 668 (Iowa 2007)).

West's experience as an attorney was primarily in the area of criminal law, and he had no experience in probate matters. West admitted that he did not possess the requisite knowledge to handle this probate matter competently. He neither took steps to understand the probate requirements nor followed through in seeking outside expertise. Accordingly, West's failure to administer the estate constituted incompetent representation, violating rule 32:1.1.

**B. Diligence—Rule 32:1.3.** This rule provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. Rule 32:1.3 "requires an attorney to

handle a client matter in a 'reasonably timely manner.' " *Vandel*, 889 N.W.2d at 667 (quoting *Netti*, 797 N.W.2d at 598). Violations of this rule occur "when an attorney fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters." *Id.* (quoting *Nelson*, 838 N.W.2d at 537); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 495 (Iowa 2010) (holding attorney violated rule 32:1.3 for the dilatory handling of estates, despite receiving delinquency notices and inquiries from the beneficiaries).

Generally, a violation does not "occur from one missed deadline, but arises when a lawyer 'repeatedly fail[s] to perform required functions as attorney for the executor, repeatedly fail[s] to meet deadlines, and fail[s] to close the estate within a reasonable period of time.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012) (alteration in original) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002)). "[N]eglect involves 'a consistent failure to perform those obligations that a lawyer has assumed[] or a conscious disregard for the responsibilities a lawyer owes to a client.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss,* 786 N.W.2d 860, 867 (Iowa 2010) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004)). It often involves "a lawyer doing little or nothing to advance the interests of a client after agreeing to represent the client." *Moorman*, 683 N.W.2d at 552.

West repeatedly failed to perform the legal obligations he assumed in probating the Rumme estate. He failed to perform the required functions as an attorney for the executor, meet deadlines, publish required notice, file the final report, and timely close the estate prior to the three-year statutory deadline in Iowa Code section 633.473 (2017).

West's consistent failures to perform his obligations as an attorney in the Rumme estate violate rule 32:1.3.

**C. Failure to Respond to the Board—Rule 32:8.1(b).** This rule provides a lawyer shall not "knowingly fail to respond to a lawful demand for information from . . . [a] disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(b). " 'Knowingly' means 'actual knowledge of the fact in question' and 'may be inferred from circumstances.' " *Nelson*, 838 N.W.2d at 539–40 (quoting Iowa R. Prof'l Conduct 32:1.0(f)). We infer a lawyer knowingly failed to respond when the lawyer received the Board's inquiries, yet failed to provide a timely response. *Id.*; *Netti*, 797 N.W.2d at 604–05; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 60 (Iowa 2009) (per curiam). A lawyer "has an obligation to cooperate with disciplinary authorities and . . . failure to respond to an investigation committee's request constitutes a separate act of misconduct subjecting the attorney to discipline." *Casey*, 761 N.W.2d at 60.

West received at least seven letters from the Board regarding the delinquencies in closing the Rumme estate. West responded to the Board on only two occasions, after the clerk of the supreme court issued a notice of possible temporary suspension pursuant to Iowa Court Rule 35.7(3)(*a*) to him. West admitted he received inquiries from the Board regarding the delinquencies in the probate matter and failed to respond; thus he violated rule 32:8.1(b).

**D. Conduct Prejudicial to the Administration of Justice—Rule 32:8.4(d).** This rule prohibits a lawyer from engaging "in conduct prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). "[A]ctions that have commonly been held to violate this disciplinary rule have hampered 'the efficient and proper operation of the

courts or of ancillary systems upon which the courts rely.' " *Vandel*, 889 N.W.2d at 666 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)). We have found a violation of rule 32:8.4(d) when a lawyer's "misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 124 (Iowa 2013)). "In a number of cases involving probate neglect, we have held that a finding of neglect and conduct prejudicial to the administration of justice can exist alongside each other." *Van Ginkel*, 809 N.W.2d at 103; *accord Netti*, 797 N.W.2d at 605; *Lickiss*, 786 N.W.2d at 867; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 380–81 (Iowa 2007).

West's conduct caused the district court to issue numerous delinquency notices. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 699 (Iowa 2008) (holding use of clerk's office as a "private tickler system" is conduct prejudicial to the administration of justice). Accordingly, his multiyear procrastination in the closing of the Rumme estate amounted to conduct prejudicial to the administration of justice in violation of rule 32:8.4(d).

West also violated rule 32:8.4(d) when he failed to respond to communications from the Board. *See Nelson*, 838 N.W.2d at 540–41 (holding attorney violated rule 32:8.4(d) when he did not timely respond to Board inquiries); *Casey*, 761 N.W.2d at 60 (holding attorney's failure to respond to Board in a timely fashion violated rule 32:8.4(d)). Finally, West violated rule 32:8.4(d) by prematurely receiving the entire attorney fee to handle the probate of the estate contrary to Iowa Court Rule 7.2(4). *See Van Ginkel*, 809 N.W.2d at 105 (concluding attorney violated rule 32:8.4(d) when he prematurely received second-half fee without payment

of court costs); *Ackerman,* 786 N.W.2d at 497 (concluding attorney's premature taking of probate fees contrary to our court rules was prejudicial to the administration of justice).

**E. Probate Fees—Rule 32:1.5(a).** "Iowa law prohibits an attorney from collecting fees in probate cases without a prior court order approving the fees." *Lickiss,* 786 N.W.2d at 867 (citing Iowa Code §§ 633.197, .198); *see* Iowa Ct. R. 7.2. Accepting an attorney fee for the administration of an estate "without prior approval by the court violates rule 32:1.5(a)," which prohibits fees charged or collected in violation of the law. *Lickiss,* 786 N.W.2d at 867–68. In addition, an attorney is entitled to only half of the fee for ordinary services in a probate proceeding until filing the final report and paying costs. Iowa Ct. R. 7.2(4).

West did not file a written application for or receive court approval prior to taking the full amount of legal fees for his services in this probate matter. West also received full payment for his services in this probate matter prior to filing the final report and paying the estate costs. Thus, West violated rule 32:1.5(a).

**F. Communication—Rule 32:1.4(a)(3).** This rule provides, "A lawyer shall . . . keep the client reasonably informed about the status of the matter." Iowa Ct. R. 32:1.4(a)(3). West did not keep the executor of the estate informed with respect to the status of the probate matter and did not respond to the executor's attempts to communicate with him. West's failure to communicate with the executor of the estate caused such frustration that the executor attempted to file a final report and began communicating directly with the probate judge. West's conduct in failing to provide the executor of the estate with any information about

the estate's progress, required tasks, and deadlines violated rule 32:1.4(a)(3).

**IV. Sanctions.**

Upon accepting the stipulation filed by the parties, the commission held a hearing on December 16, 2016, to determine an appropriate sanction. The commission recommends we suspend West's license to practice law indefinitely, with no possibility of reinstatement for six months. In addition to the indefinite suspension, the commission recommends West be ordered to hire a probate attorney to finish and close the Rumme estate, pay said attorney's fee and court costs, and refund half of the attorney fee West received to the executor of the estate. We note the Board, in its brief, previously recommended to the commission that West should be publicly reprimanded at a minimum and be required to associate with legal counsel hired by the executor of the estate to close the estate at West's expense.

We have discretion to impose a greater or lesser sanction than recommended by the commission. *Nelson*, 838 N.W.2d at 542. In determining an appropriate sanction, we take into account

> the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and the court's duty to uphold the integrity of the profession in the eyes of the public. We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Id.* (quoting *Templeton*, 784 N.W.2d at 769–70).

Sanctions for attorney misconduct involving neglect have typically ranged from a public reprimand to a six-month suspension. *Lickiss*, 786 N.W.2d at 868. "Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations." *Id.* (quoting

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks* (*Marks I*), 759 N.W.2d 328, 332 (Iowa 2009)).

We have found a public reprimand sufficient for attorney misconduct involving neglect in a number of cases. *Van Ginkel*, 809 N.W.2d at 109 (collecting cases). However, in other cases, we imposed sixty-day suspensions. *See id.* at 111 (imposing a sixty-day suspension upon an attorney who neglected the closing of an estate, obtained probate fees prematurely, and made a false statement to the court); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 295 (Iowa 2011) (imposing a sixty-day suspension on attorney who had a history of sanctions for failing to cooperate with the Board and not communicating with clients, and who had again neglected client matters and failed to communicate with clients); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 381–82 (Iowa 2002) (imposing a sixty-day suspension when attorney with only one prior reprimand for neglect again neglected his client, made misrepresentations to the court, failed to respond to a court order, and did not cooperate with the Board).

"In cases involving neglect in one or two cases and other misconduct such as misrepresentations associated with the neglect, the suspensions have been in the range of three months." *Van Ginkel*, 809 N.W.2d at 109; *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks* (*Marks II*), 831 N.W.2d 194, 202 (2013) (imposing a three-month suspension for attorney's neglect of estate and failure to cooperate with the Board); *Lickiss*, 786 N.W.2d at 868–69, 872 (imposing a three-month suspension for multiple instances of neglect in four probate matters, early collection of fee, and failure to respond to clients and the Board); *Ackerman*, 786 N.W.2d at 497–98 (imposing a ninety-day suspension for neglect in two estates, multiple misrepresentations to the court and to

the beneficiaries of one of the estates, and early receipt of probate fees); *Casey*, 761 N.W.2d at 61–62 (imposing a three-month suspension for neglect in two cases, multiple misrepresentations to the court and the tax department, and premature collection of a probate fee and failure to deposit the fee into a trust account); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 669–70 (Iowa 2008) (imposing a four-month suspension for neglect in three cases, misrepresentation associated with neglect, failure to account to a client, and failure to respond to the Board). In cases where the pattern of misconduct is more extensive or involves serious misrepresentations, we typically impose longer suspensions. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 333–34, 335–40 (Iowa 2015) (imposing a six-month suspension on an attorney who failed to properly close two estates for a number of years, made multiple misrepresentations, including creating a false check claiming to pay off the creditors of one of the estates, failed to deposit client payments into the client trust account, and took fees years before court approval).

Before reaching our conclusion on the proper sanction for West's ethical violations, we will first consider the mitigating and aggravating circumstances present in this case. West contends that his health problems, including a broken leg in 2013, heart surgery in 2015, and depression, are mitigating factors. "Personal illnesses, such as depression, do not excuse a lawyer's misconduct but can be mitigating factors and influence our approach to discipline." *Marks I*, 759 N.W.2d at 332. Accordingly, West's health issues are mitigating factors we can take into consideration.

We view an attorney's community service as a mitigating factor in disciplinary cases. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*,

844 N.W.2d 456, 467 (Iowa 2014). We acknowledge West's community service and pro bono work are mitigating factors in this case. An attorney's recognition of some wrongdoing is also a mitigating factor. *Vandel*, 889 N.W.2d at 669–70. In this case, West fully acknowledged and accepted responsibility for his misconduct and expressed remorse to everyone involved. Finally, West testified that he would never take on another probate matter. Voluntary remedial efforts to limit an attorney's practice to areas of competence do not excuse misconduct; however, we consider such efforts to be a mitigating circumstance. *Lickiss*, 786 N.W.2d at 871.

We now turn to the aggravating factors. In 2012, West received an admonition for failing to keep a client reasonably informed in violation of rule 32:1.4(a)(3). While a prior private admonition is not discipline, we consider it an aggravating factor because it put West on notice of his ethical requirements. *See Van Ginkel*, 809 N.W.2d at 110.

We also consider harm to a client an aggravating factor that affects our determination. *Vandel*, 889 N.W.2d at 669. There are two beneficiaries of the Rumme estate—William Rumme, and his brother, Allen Rumme. According to the will, the estate was to be distributed equally between the two brothers. The estate had one asset, which was a bank account valued at $55,936.65. In 2010, William Rumme took all the assets of the estate contrary to the will. West caused harm to the estate by failing to ensure the estate funds were properly distributed to each beneficiary of the estate. Additionally, we consider West's many years of experience in the practice of law an aggravating circumstance. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner*, 599 N.W.2d 721, 730 (Iowa 1999).

West's misconduct stems entirely from him mishandling the probate of a single estate—his incompetent representation, neglect, failure to respond to the Board regarding his neglect, procrastination prejudicial to the administration of justice, premature receipt of the attorney fee, and failure to keep his client reasonably informed. We note that this case does not involve any false statements or misrepresentations to the court, which typically result in more severe disciplinary sanctions. *See Van Ginkel*, 809 N.W.2d at 111 ("A knowing misrepresentation to the court is a particularly disturbing factor.").

Taking into consideration West's violations, the mitigating factors, and the aggravating factors, we conclude West should be suspended for sixty days with the possibility of automatic reinstatement. In addition, West is required to refund the $1000 fee he accepted for the probate of the estate. We do not adopt the commission's suggestion that West hire a probate attorney to finish and close the estate of Rumme and pay said attorney's fee and court costs.

**V. Disposition.**

For the above reasons, we suspend West's license to practice law in this state for sixty days. Reinstatement of West's license to practice law is automatic on the day after the sixty-day suspension period expires, unless the Board objects to his automatic reinstatement. Iowa Ct. R. 34.23(2). We condition West's reinstatement upon him providing the Board with evidence that he informed the probate court of his suspension, withdrew from representing the estate, informed the court that William Rumme took all of the funds from the estate, refunded the $1000 fee he received, complied with court rule 34.24, and paid the costs of this action. The suspension applies to all facets of the practice of law

provided by Iowa Court Rule 34.23(3).  We tax the costs of this proceeding against West pursuant to Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**