# IN THE SUPREME COURT OF IOWA

No. 11–1016

Filed May 25, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

       Complainant,

vs.

**SAMUEL ZACHARY MARKS,**

       Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

An attorney filed a notice of appeal concerning a recommendation of the Grievance Commission of the Supreme Court of Iowa. **ATTORNEY REPRIMANDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

David L. Brown and Jay D. Grimes of Hansen, McClintock & Riley, Des Moines, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, Samuel Zachary Marks, alleging multiple violations of the Iowa Rules of Professional Conduct. A division of the Grievance Commission of the Supreme Court of Iowa found the respondent's conduct violated the rules and recommended we suspend his license with no possibility of reinstatement for six months. On our de novo review, we find Marks violated our rules. However, we disagree with the commission's findings and recommended sanction. Instead, we publicly reprimand him for his conduct.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 101 (Iowa 2010). The Board must prove disciplinary violations by a convincing preponderance of the evidence. *Id.* A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 809 N.W.2d 543, 545 (Iowa 2012). We give respectful consideration to, but are not bound by, the commission's findings and recommendations. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (Iowa 2009). Upon proof of misconduct, we may impose a greater or lesser sanction than that recommended by the commission. *Axt*, 791 N.W.2d at 101.

## II. Factual Findings and Prior Proceedings.

Marks has been licensed to practice law in Iowa since 2000. He practices in the areas of bankruptcy and consumer protection.

During the past five years, Marks has been disciplined multiple times. We temporarily suspended his license in 2006 and 2008 for

failure to cooperate with the Board. Further, in 2007, the Board publicly reprimanded him for lack of diligence, incompetence, and failing to cooperate timely and fully with the Board. Finally, in 2009, we suspended his license for thirty days for neglecting client matters and failing to cooperate with the Board. There, we took into account Marks' prior disciplinary history and his battle with depression. In this case, the Board alleges Marks committed ethical violations during his representation of a client in a foreclosure action, after the termination of the attorney–client relationship, and during his subsequent interactions with the Board.

**A. Winona Property.** In August 2005, Linda Kenney hired Marks to defend her in a foreclosure action involving her house, located on Winona Avenue in Des Moines. Marks filed an answer and a demand for delay of sale on Kenney's behalf. Despite Marks' efforts, the court foreclosed Kenney's interest in her house on November 29. The court set a sheriff's sale for May 29, 2006, which gave Kenney a six-month redemption period.

After subsequent attempts to find alternative financing failed, but before the sheriff's sale, Marks offered to purchase Kenney's property, pay off Kenney's mortgage, and sell the home back to Kenney once she obtained new financing. Meanwhile, Kenney and her boyfriend would continue to live in the home and make monthly payments to Marks.

Marks recognized the need to terminate the attorney–client relationship before he could enter into a transaction with Kenney. To that end, Marks drafted an agreement, dated April 14, 2006, which stated the following:

> The undersigned parties acknowledge that Samuel Z. Marks and Marks Law Firm, P.C. provide no further legal representation to Linda Kenney. The undersigned parties

> acknowledge that any legal representation provided in the past to Linda Kenney by Samuel Z. Marks and Marks Law Firm, P.C. is hereby terminated and there is no further expectation of representation. The undersigned parties acknowledge that Linda Kenney wishes to enter into a real estate transaction with Samuel Z. Marks and Jennifer Marks. The undersigned parties acknowledge that Linda Kenney has the right and should seek independent counsel with respect to any real estate transaction entered into with Samuel Z. Marks and Jennifer Marks.

Marks and Kenney signed the agreement. Marks testified that he believed the agreement severed the attorney–client relationship and that he entered into the transaction for the sole purpose of helping Kenney remain in her house. He also testified he never intended to profit from the transaction.

On April 26, Marks' wife took out a purchase money mortgage on the property. Although the mortgage was in his wife's name, Marks also signed the mortgage as a borrower. On April 28, Kenney executed a warranty deed transferring the property to Marks' wife. Marks admitted he was involved in the preparation of the deed. Marks and his wife then purchased the property from the bank, satisfying the amount Kenney owed on her mortgage. Kenney testified she did not realize she actually transferred the property to Marks' wife until after she had done so.

Kenney and her boyfriend continued to live in the house and made sporadic payments to Marks. On February 25, 2009, Kenney and Marks' wife executed a written real estate contract, naming Kenney and her boyfriend as the buyers and Marks' wife as the seller. Marks prepared this contract. The contract set up a payment plan by which Kenney and her boyfriend would buy the property back from Marks' wife by making monthly payments.

As of December 13, 2010, the date of Marks' hearing before the commission, Kenney and her boyfriend continued to live in the home.

Marks estimated at the hearing that he was between $30,000 and $40,000 behind on his mortgage payments. He also testified he would immediately sign the deed over to Kenney if she obtained financing for the amount of his mortgage.

**B. Disciplinary Proceedings.** Kenney filed a complaint against Marks with the Board on July 16, 2008. Marks received notice of the complaint against him on July 23. The notice informed Marks that Iowa Rule of Professional Conduct 32:8.1(b) required him to provide the Board with a response. It also directed him to Iowa Court Rule 34.7, which governs a respondent's failure to respond to a complaint. A copy of the complaint was enclosed with the notice.

On August 26, Marks received a second notice of complaint from the Board stating that his failure to respond within ten days could result in a temporary suspension of his license to practice law. On September 23, the Board requested that the supreme court issue a notice of possible temporary suspension to Marks. On September 30, the clerk of the supreme court filed a notice of possible temporary suspension for failure to respond. The notice informed Marks that his license would be suspended unless he responded within twenty days of the issuance of the notice. Marks responded on October 21. At no time prior to his response did Marks seek an enlargement of his time to respond to the complaint.

The Board filed a complaint alleging Marks violated the Iowa Rules of Professional Conduct by entering into a business transaction with a current client, representing a current client in a transaction materially adverse to the interests of a former client, failing to cooperate with the Board, and engaging in conduct prejudicial to the administration of justice. The commission found Marks violated rule 32:1.8(a), which

prohibits a lawyer from entering into a business transaction with a client absent certain safeguards. It also found Marks violated rule 32:8.1(b) by failing to cooperate with the Board and rule 32:8.4(d) by engaging in conduct prejudicial to the administration of justice. Finally, the commission noted it did not need to determine whether Marks violated rule 32:1.9(a), which prohibits a lawyer from representing a current client in a transaction materially adverse to the interests of a former client absent the informed written consent of the former client, because it found Marks had not severed the attorney–client relationship. The commission then stated it would have found that Marks violated rule 32:1.9(a) if it had determined Marks terminated the attorney–client relationship because Marks represented his wife throughout the real estate deal.

### III. Ethical Violations.

**A. Conflicts of Interest.** Because the Board frames its allegations against Marks in the alternative, we will consider each alternative separately.

1. *Business transaction with a current client.* While rule 32:1.8(a) does not prohibit business dealings between a lawyer and his or her client, it imposes stringent requirements on such a transaction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wintroub*, 745 N.W.2d 469, 474 (Iowa 2008). The rule provides as follows:

> (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless:

> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Iowa R. Prof'l Conduct 32:1.8(a). By its terms, rule 32:1.8(a) only applies if Marks and Kenney did not terminate the attorney–client relationship prior to entering into a business transaction. We have stated that the term "business transaction" has a broad meaning. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Fay*, 619 N.W.2d 321, 325 (Iowa 2000).

Kenney executed a warranty deed transferring the property to Marks' wife on April 28. Although the deed indicates Kenney transferred the property to Marks' wife, Marks does not dispute that he was a party to the transaction. Indeed, Marks proposed the transaction and testified he was successful in his goal to keep Kenney in her house. He further testified the transaction was in his wife's name only because she could get a better interest rate on a loan from the bank. Therefore, we must determine whether Marks and Kenney terminated the attorney–client relationship prior to the execution of the deed on April 28. The parties contend the issue of whether Marks violated rule 32:1.8(a) turns on whether the agreement of April 14, 2006, was sufficient to terminate the attorney–client relationship. However, we need not decide whether this agreement, by itself, was sufficient to terminate the relationship.

A judgment is the final adjudication of the rights of the parties. Iowa R. Civ. P. 1.951 (2005). In 2005, once a court entered judgment in a civil case, a party had ten days to file a motion or bill of exceptions. *Id.* r. 1.1007. Similarly, a party had thirty days to file a notice of appeal. Iowa R. App. P. 6.5. Generally, in a civil action, once the period for

motions and appeals expires, the lawyer's representation of his or her client ends. In foreclosure actions, a mortgagor may satisfy its judgment by paying the mortgagee the amount of the judgment prior to the sheriff's sale, but this action does not require the mortgagee to make any filings with the court. *See* Iowa Code § 654.21 (2005).

The court entered judgment against Kenney on November 29, 2005. Although Kenney filed a demand for delay of sale, which delayed the sheriff's sale until May 29, 2006, Kenney could not file any motions or an appeal following December 29, 2005. Therefore, Marks was not necessarily representing Kenney in the foreclosure action following December 29. The agreement of April 14, 2006, makes it clear that Marks terminated the attorney–client relationship and that Marks was no longer representing Kenney when the transaction with Marks' wife occurred. Therefore, rule 32:1.8(a) is not applicable.

2. *Continuing duty to former clients in the same or substantially related matter.* Rule 32:1.9(a) imposes a continuing duty on a lawyer with respect to conflicts of interest with former clients. It provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Iowa R. Prof'l Conduct 32:1.9(a). At the latest, Marks' representation of Kenney in the foreclosure action terminated on April 14, 2006. Nearly three years later, Kenney and Marks' wife executed a written real estate contract naming Kenney and her boyfriend as the buyers and Marks' wife as the seller. The contract memorialized the deal Kenney believed she was getting when she transferred the property to Marks' wife in 2006.

Marks prepared this contract. A lawyer who prepares a contract is engaged in the practice of law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 604 (Iowa 2011); *Comm. on Prof'l Ethics & Conduct v. Toomey*, 236 N.W.2d 39, 40 (Iowa 1975). Therefore, we conclude Marks was representing his wife in the sale of the property to Kenney. Thus, we must determine whether Marks should have obtained Kenney's informed consent, *confirmed in writing*, prior to representing his wife in the matter.

Matters are substantially related when they "involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Iowa R. Prof'l Conduct 32:1.9 cmt. [3]. The real estate contract dictating the terms of the sale of the property from Marks' wife to Kenney involved a matter substantially related to the foreclosure action as defined by rule 32:1.9(a) because the contract and foreclosure action concerned Kenney's property and her ability to remain in her home. Further, Marks' representation of his wife was adverse to Kenney because Marks' wife took ownership of the property while Kenney still had a right of redemption. She also became the financier of Kenney's repurchase of the property. Therefore, in this situation, Marks was required to obtain informed consent from Kenney.

Our rules define "informed consent" as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." *Id.* r. 32:1.0(e). Consequently, before a lawyer can represent an adverse client, the lawyer must communicate adequate information to the former

client and explain to the former client the material risks of the representation and the reasonable alternatives available. The informed consent must be confirmed in writing.

While representing Kenney in the foreclosure action, Marks gained an intricate knowledge of Kenney's financial condition. He knew that Kenney was unable to save her house from foreclosure because she did not have the financial ability to do so. We believe Marks should have known that because of Kenney's financial situation there was a reasonable possibility that she would still be unable to retain her home even if she entered into an agreement with Marks' wife. Marks should have informed Kenney that if she entered into a contract with his wife and was unable to make the payments, then she would be subject to further litigation and a potential personal judgment against her. If Kenney did not enter into the real estate contract, she would have only lost her house and not have potentially been subject to further litigation or a personal judgment. Additionally, Marks should have disclosed to her that if she did not enter into the transaction with Marks, she would lose her home, but the litigation over the home would cease and there would be no deficiency judgment against her.

In defense of his failure to obtain Kenney's informed consent in writing prior to representing his wife, Marks essentially argues the subsequent representation was not materially adverse to Kenney because he did a good deed by assuming Kenney's mortgage, which allowed her to remain in her home. Marks' altruistic intentions may be noble, but they do not excuse his failure to comply with his ethical obligations. Because there is no indication in the record that Marks received Kenney's informed consent confirmed in writing to Marks' representation of his wife in the real estate transaction, Marks violated rule 32:1.9(a).

**B.** **Failure to Cooperate with the Board.** Attorneys must cooperate with disciplinary investigations. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 821 (Iowa 2004). The commission found Marks violated rules 32:8.1(b) and 32:8.4(d) because he did not cooperate with the Board's investigation. We agree.

Rule 32:8.1(b) requires that "a lawyer in connection with . . . a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(b). Under our rules, a respondent in an attorney disciplinary proceeding must provide a written response within twenty days of receiving the complaint. Iowa Ct. R. 34.6(4). Failure to respond to the complaint is a violation of our rules. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 680 (Iowa 2010); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 331 (Iowa 2009). If the respondent fails to respond, we may infer from the circumstances that the respondent knowingly failed to respond. Iowa R. Prof'l Conduct 32:1.0(f). Marks first received notice of the complaint on July 23, 2008. He did not respond until October 21, almost three months later and only after repeated notices from the Board and a notice of possible temporary suspension from the supreme court clerk. These circumstances show Marks knowingly did not respond to the Board's inquiries. Therefore, Marks violated rule 32:8.1(b).

Rule 32:8.4(d) prohibits a lawyer from engaging "in conduct that is prejudicial to the administration of justice." *Id.* r. 32:8.4(d). It is well established that a lawyer's failure to respond to inquiries from the Board constitutes conduct prejudicial to the administration of justice. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 631, 632 (Iowa 2009); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748

N.W.2d 498, 502 (Iowa 2008); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 722 N.W.2d 199, 205 (Iowa 2006); *Comm. on Prof'l Ethics & Conduct v. Bromwell*, 389 N.W.2d 854, 857 (Iowa 1986). Marks did not respond to the Board for nearly three months in this case. Therefore, Marks violated rule 32:8.4(d).

### IV. Determination of Appropriate Sanction.

To determine the appropriate sanction, we consider

> the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Ireland*, 748 N.W.2d at 502. Moreover, the sanction "must be tailored to the specific facts and circumstances of each individual case." *Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981).

One of Marks' violations relates to his failure to obtain Kenney's informed consent confirmed in writing prior to the time that he represented his wife. While we do not have any cases directly on point, this situation is sufficiently analogous to one in which an attorney enters into a business transaction with a current client without following the rules in place to safeguard the interests of the client. In those cases, the sanction can range from a public reprimand to revocation of the lawyer's license to practice law. *See, e.g., Comm. on Prof'l Ethics & Conduct v. Hall*, 463 N.W.2d 30, 36 (Iowa 1990) (revoking the license of a lawyer who entered into a series of transactions with a client, resulting in the client's loss of several hundred thousand dollars); *Comm. on Prof'l Ethics & Conduct v. Mershon*, 316 N.W.2d 895, 900 (Iowa 1982) (publicly reprimanding an attorney who formed a corporation with a client).

In this case, there is no evidence indicating Marks' actions harmed his client. Marks stated he did not intend any outcome from engaging in the transaction other than to allow Kenney to continue to live in the house. He also testified he would immediately transfer the property back to Kenney if she could obtain financing to pay off the mortgage. Although Marks and his wife still own the property, Kenney and her boyfriend continue to live in the house.

The commission recommended a six-month suspension in large part due to Marks' disciplinary history. In 2009, we suspended Marks' license to practice law for thirty days following his neglect of two matters and his failure to cooperate with the disciplinary process. In doing so, we took note of Marks' previous disciplinary record, which included sanctions for lack of diligence, incompetence, and multiple instances of failing to cooperate with the Board. We also considered his depression a mitigating factor. Finally, we warned Marks that future misconduct would result in harsher sanctions. We wrote:

> We also issue Marks a stern warning. He is teetering on the brink of disaster. Although he is fit to practice law, he has fallen into a pattern of neglect and non-cooperation these past few years. If he does not remedy this behavior, he will receive a harsher sanction next time he appears before us. Although we are sympathetic to the struggles Marks has endured with depression, his past conduct and record as a whole indicates he lacks diligence and professionalism.

*Marks*, 759 N.W.2d at 333 (citation omitted).

However, all of Marks' conduct that is the subject of the present disciplinary action occurred prior to the date in 2009 when we suspended his license for thirty days. Had we been aware in 2009 of the conduct that is the subject of the present disciplinary proceeding, it is unlikely that we would have suspended Marks' license for more than

thirty days. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moorman*, 729 N.W.2d 801, 805–06 (Iowa 2007). Therefore, we see no reason to elevate Marks' sanction here. A public reprimand will do. We also remind Marks of our prior warning that future misconduct will result in harsher sanctions.

## V. Disposition.

For the above reasons, we publicly reprimand Marks rather than impose the suspension recommended by the commission. We tax the costs of this proceeding to Marks in accordance with Iowa Court Rule 35.26(1).[1]

**ATTORNEY REPRIMANDED.**

---

[1]On February 20, 2012, we renumbered this rule to 35.27(1). Because Marks' hearing before the grievance commission commenced prior to the renumbering, we must refer to rule 35.26(1). *See* Iowa Ct. R. 35.26 (2012) (renumbered from rule 35.25 in February 2012).