# IN THE SUPREME COURT OF IOWA

No. 13–0128

Filed May 24, 2013

**IOWA SUPREME COURT**
**ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**SAMUEL ZACHARY MARKS,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance Commission found that respondent committed ethical violations and recommended a license suspension of six months. **LICENSE SUSPENDED.**

Charles L. Harrington and Patrick W. O'Bryan, Des Moines, for complainant.

Samuel Z. Marks, pro se.

**ZAGER, Justice**.

This matter comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Attorney Disciplinary Board (Board) alleged the respondent, Samuel Zachary Marks, violated four ethical rules in handling a probate matter by providing representation that was not competent, failing to act with reasonable diligence, failing to expedite litigation, and engaging in conduct prejudicial to the administration of justice. The grievance commission found Marks violated the Iowa Rules of Professional Conduct and recommended a six-month suspension. Upon our de novo review of the findings of fact, conclusions of law, and recommendation of the commission, we find Marks committed ethical violations and suspend his license to practice law indefinitely with no possibility of reinstatement for three months.

## I. Background Facts and Proceedings.

The Board filed its complaint against Marks on August 2, 2012. Marks did not file an answer, and the Board's motion to invoke Iowa Court Rule 36.7 was granted by the commission on November 20, 2012. Under that rule, the Board's allegations are deemed admitted. Iowa Ct. R. 36.7; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 544 (Iowa 2012). Based on the admitted allegations, and upon our de novo review of the record, we find the following facts.

Marks opened the estate of William General Rumley on November 14, 2003, and became the attorney of record for the administrator of the estate. Since the opening of the estate, the estate has been subject to nine notices of delinquency. On December 1, 2009, Marks was issued a notice of delinquency for failing to file a final report in the estate. Marks was given sixty days to cure the delinquency. When he failed to cure the

delinquency by December 1, 2010, the Polk County District Court filed a certification with respect to this delinquent probate matter with the court administrator, who then forwarded it to the Board.

The Board sent four separate communications regarding the matter to Marks over a period of eight months. Marks did not respond until two months after the fourth communication, promising to follow up within two weeks of that communication. He failed to follow up.

Marks has appeared before this Court in both 2009 and 2012 for disciplinary issues. In the 2009 case, we found Marks had neglected his responsibilities in probating two estates—one of which was the Rumley estate that is the subject of this disciplinary matter. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks* (*Marks I*), 759 N.W.2d 328, 330–31 (Iowa 2009). In that case, we suspended Marks's license for a period of thirty days. *Id.* at 333. In the 2012 case, we concluded Marks had violated ethics rules in a transaction that had occurred in 2005, prior to the date in 2009 when we suspended Marks's license. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks* (*Marks II*), 814 N.W.2d 532, 536, 542 (Iowa 2012). Ultimately, we determined that "[h]ad we been aware in 2009 of the conduct that is the subject of the present disciplinary proceeding, it is unlikely that we would have suspended Marks'[s] license for more than thirty days." *Id.* As a result, we issued only a public reprimand. *Id.*

Marks has also been the subject of prior discipline for failure to cooperate with the Board, which we detailed in both the 2009 and 2012 cases. *Id.* at 536 ("We temporarily suspended his license in 2006 and 2008 for failure to cooperate with the Board. Further, in 2007, the Board publicly reprimanded him for lack of diligence, incompetence, and failing to cooperate timely and fully with the Board."); *Marks I*, 759 N.W.2d at 332 ("In the present case, Marks neglected two probate

matters and failed to cooperate with the Board's investigation. . . . Marks had been publicly reprimanded in 2007, and his license was temporarily suspended for failure to cooperate with the Board in 2006." (Citations omitted.)).

In the current case, Marks failed to answer the Board's complaint, and the commission thus deemed the allegations admitted. The commission found that Marks's conduct in the handling of the Rumley estate violated four ethics rules and recommended he be suspended for six months. Further, as a condition of reinstatement, the commission recommended we require Marks to obtain a medical evaluation from a qualified physical or mental health professional who specializes in the treatment of professionals such as lawyers, certifying that Marks is fit to practice law.

## II. Standard and Scope of Review.

We have previously articulated our standard of review in attorney disciplinary cases as follows:

> Attorney disciplinary proceedings are reviewed de novo. The Board bears the burden of proving misconduct by a convincing preponderance of the evidence, which is a lesser burden than proof beyond a reasonable doubt but a greater burden than is imposed in the usual civil case. If we determine the Board has met its burden and proven misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 876–77 (Iowa 2012) (citation and internal quotation marks omitted).

## III. Ethical Violations.

The Board charged Marks with violating four provisions of the Iowa Rules of Professional Conduct. The commission concluded that the Board had proven each of the four charges.

**A. Competence.** Iowa Rule of Professional Conduct 32:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Iowa R. Prof'l Conduct 32:1.1.

Recently, we have defined competent representation in the scope of rule 32:1.1 to " 'include[] inquiry into and analysis of the factual and legal elements of the problem' as well as 'adequate preparation.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 531 (Iowa 2011) (quoting Iowa R. Prof'l Conduct 32:1.1 cmt. 5). We further stated that

> [t]o establish an attorney has violated rule 32:1.1, the board must prove the attorney did not possess the requisite legal knowledge and skill to handle the case or that the attorney did not make a competent analysis of the factual and legal elements of the matter.

*Id.* (citation and internal quotation marks omitted).

Marks's testimony before the grievance commission indicated he did not feel he was competent to practice in the area of probate. One of the commissioners asked whether Marks felt he (Marks) was "fit to practice law and proficient in the probate area." Marks responded, "No, I don't feel I'm proficient in the probate area," though he further stated he believed he was "fit to practice law." Marks was also asked, "When did you realize that probate was not an area of practice that you could handle?" Marks responded, "Many, many years ago. Well, 2003, 2004, in that general area." Marks told the commission he had restricted his probate practice to favors for friends and a former client.

We find that the Board has proven by a convincing preponderance of the evidence that Marks did not possess "the requisite legal knowledge

and skill to handle the case or that [he] did not make a competent analysis of the factual and legal elements of the matter." *See Dunahoo*, 799 N.W.2d at 531 (citation and internal quotation marks omitted). Marks's conduct constituted more than mere instances of neglect. Marks testified that he found probate, in general, and the Rumley estate in particular, "unpleasant," and that he faced "some sort of mental block" that prevented him from completing his responsibilities in regard to this estate. We have stated that when the Board has only "shown instances of neglect," this does not constitute a showing that an attorney "lacked the skill or knowledge to handle" the matters which the attorney undertook. *Id.* Here, however, Marks acknowledged that he lacks the legal knowledge and skill necessary to handle probate matters and is not competent in this area. The Board has shown by a convincing preponderance of the evidence that Marks is not competent to handle probate matters. *See* Iowa R. Prof'l Conduct 32:1.1 cmt. 5. We thus conclude that the Board has proven a violation of rule 32:1.1.

**B. Diligence.** Iowa Rule of Professional Conduct 32:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." *Id.* r. 32:1.3. Acting with diligence means that "[a] lawyer should pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor." *Id.* r. 32:1.3 cmt. 1. This rule requires an "attorney to handle matters in a reasonably timely manner." *Dunahoo*, 799 N.W.2d at 532 (citation and internal quotation marks omitted).

> We have further clarified, in the context of probate law that
>
> an ethical violation does not typically occur from one missed deadline, but arises when a lawyer repeatedly fail[s] to perform required functions as attorney for the executor,

repeatedly fail[s] to meet deadlines, and fail[s] to close the estate within a reasonable period of time.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012) (citation and internal quotation marks omitted). The Board cannot prove a violation unless it demonstrates that a lawyer has shown "a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Id.* (citation and internal quotation marks omitted).

In his testimony before the commission, Marks acknowledged that when things with the estate became challenging, he would "push it to the back burner." The estate was opened in 2003 and was not closed until February 2013, two months after Marks's hearing before the commission. Marks received nine delinquency notices, which he failed to cure prior to the commission hearing. Additionally, in 2009, he received disciplinary action because of his neglect of this same estate. *Marks I*, 759 N.W.2d at 331, 333. We conclude the Board has proven by a convincing preponderance of the evidence that Marks did not act with diligence in probating the Rumley estate, in violation of rule 32:1.3.

**C. Expediting Litigation.** Iowa Rule of Professional Conduct 32:3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. Prof'l Conduct 32:3.2. *Black's Law* defines "litigation" as either "[t]he process of carrying on a lawsuit" or "[a] lawsuit itself." *Black's Law Dictionary* 1017 (9th ed. 2009). In order to define "lawsuit," *Black's Law* directs the reader to the definition of "suit." *Id.* at 967. "Suit" is defined as "[a]ny proceeding by a party or parties against another in a court of law." *Id.* at 1572.

In the past, we have found violations of rule 32:3.2 when the actions or inactions of attorneys resulted in adverse outcomes for clients in adversarial proceedings. *E.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 606 (Iowa 2012) (finding a violation of rule 32:3.2 for "fail[ing] to appear in court or fail[ing] to timely remedy a deficient filing," as well as neglecting discovery requests); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 914–15 (Iowa 2011) (concluding that attorney's failure to comply with appellate deadlines, which resulted in an administrative dismissal, violated rule 32:3.2); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 679–80 (Iowa 2010) (concluding that attorney's "neglect of [his client]'s case, including his failure to appear for status conferences and respond to court inquiries, which resulted in what [the client] perceived as unfavorable court decisions, violated rule[] . . . 32:3.2"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 282, 284 (Iowa 2010) (concluding that attorney violated rule 32:3.2 when his client's appeal was dismissed for want of prosecution after attorney received two notices of default and one extension).

In this case, the Board did not prove by a convincing preponderance of the evidence that Marks violated rule 32:3.2. Though Marks was certainly derelict in his duties to the court and to the client, we do not classify the probate delinquencies here as litigation and thus do not find a violation of rule 32:3.2.

**D. Misconduct.** Iowa Rule of Professional Conduct 32:8.4(d) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Iowa Rule Prof'l Conduct 32:8.4(d). When applying rule 32:8.4(d), we have said,

> [T]here is no typical form of conduct that prejudices the administration of justice, [but] actions that have commonly been held to violate this disciplinary rule have hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.

*Cunningham*, 812 N.W.2d at 550 (citation and internal quotation marks omitted).

In *Cunningham*, we stated that "an attorney's dilatory conduct violates rule 32:8.4(d) when that conduct places additional burdens on the . . . court." *Id.* We have found violations of rule 32:8.4(d) in a number of probate cases where the attorney's handling of the estate was dilatory. *See, e.g., Van Ginkel*, 809 N.W.2d at 103 ("The Board has established that valuable judicial and staff resources were expended on issuing orders, extending deadlines, and cleaning up the probate proceedings."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011) (concluding that attorney's failure to timely probate an estate, along with other actions, "hampered the efficient operation of the courts . . . and was not the type of conduct within the well-understood norms and conventions of the practice of law," thus violating rule 32:8.4(d)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010) (concluding that attorney's dilatory handling of an estate, including failure to file required reports and cure numerous delinquencies, "required otherwise unnecessary administrative oversight by the clerk of court and judicial officers," resulting in a violation of rule 32:8.4(d)); *Marks I*, 759 N.W.2d at 331 (concluding that Marks's prior dilatory handling of two probate matters, including the Rumley estate, constituted "conduct that is prejudicial to the administration of justice"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 701 (Iowa 2008) (concluding that an attorney's "handling of [an] estate by leaving it open for a protracted period of time,

together with the numerous violations in doing so, constituted conduct prejudicial to the administration of justice"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 380–81 (Iowa 2007) (concluding that failure to file necessary reports and receipt of three probate delinquency notices constituted a violation of the rule requiring that a lawyer shall not engage in conduct that is prejudicial to the administration of justice).

Moreover, "[w]e expect and demand attorneys to cooperate with disciplinary investigations." *Marks I*, 759 N.W.2d at 331. "Á failure to do so is an independent act of misconduct," in violation of the prohibition to "not engage in conduct that is prejudicial to the administration of justice." *Id.*

Marks's continued dilatory handling of the Rumley estate involved substantial time and resources of the clerk of court and judicial officers, as well as the resources of the commission and this court. In responding to a commissioner's question, Marks agreed that it is not "fair for the court to spend as much time in getting [him] to tend to [his] cases and giv[e] [his] clients the service that they need." We conclude the Board met its burden in establishing that Marks violated rule 32:8.4(d) by jeopardizing "the efficient and proper operation of the courts." *See Cunningham*, 812 N.W.2d at 550.

## IV. Sanction.

We apply no standard sanction for any particular type of misconduct. *Cannon*, 821 N.W.2d at 880. Though we look to prior cases for guidance, we fashion sanctions based on the specific circumstances of each case. *Id.*

> In determining the appropriate discipline, we consider the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the

> bar as a whole, and the respondent's fitness to continue in the practice of law, as well as any aggravating and mitigating circumstances. The form and extent of the sanctions must be tailored to the specific facts and circumstances of each individual case. Significant distinguishing factors in the imposition of punishment center on the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.

*Id.* (citation and internal quotation marks omitted).

We have previously recognized that "[i]n cases involving neglect, . . . sanctions typically range from a public reprimand to a suspension of up to six months." *Van Ginkel*, 809 N.W.2d at 108–09.

Due to his multiple appearances before this court on prior disciplinary issues, Marks has some unique aggravating factors. In 2009, we issued Marks a warning, which we quoted in full in 2012:

> "We also issue Marks a stern warning. He is teetering on the brink of disaster. Although he is fit to practice law, he has fallen into a pattern of neglect and non-cooperation these past few years. If he does not remedy this behavior, he will receive a harsher sanction next time he appears before us. Although we are sympathetic to the struggles Marks has endured with depression, his past conduct and record as a whole indicates he lacks diligence and professionalism."

*Marks II*, 814 N.W.2d at 541–42 (quoting *Marks I*, 759 N.W.2d at 333). We concluded our 2012 opinion with a further reminder. "We also remind Marks of our prior warning that future misconduct will result in harsher sanctions." *Id.* at 542.

We have previously addressed a situation where we disciplined an attorney for neglect of a probate case and the attorney failed to cure that neglect after being disciplined. *Lickiss*, 786 N.W.2d at 869. We noted, "Lickiss's prior discipline poses the rather unique circumstance of having occurred in three of the same cases that are the subject of this disciplinary proceeding." *Id.* In that case, we said,

> We think the prior reprimand constitutes a particularly aggravating circumstance because one would expect that the initial discipline for failing to address the probate delinquencies would have prompted the respondent to attend to his clients' legal matters or obtain the assistance of an attorney who would attend to these matters.

*Id.* at 869–70. We suspended Lickiss's license for three months. *Id.* at 872. We consider Marks's continued misconduct in the face of two warnings specifically directed to him in reference to this same type of conduct to be a significant aggravating factor.

Complicating the matter even more is Marks's depression. In 2009, we considered Marks's depression to be a mitigating factor because "Marks [was] . . . undergoing treatment for depression and believe[d] it [could] be controlled with medication." *Marks I*, 759 N.W.2d at 332. However, though Marks continues to take medication for his depression, he is no longer in counseling. He conceded that he "found it very helpful" and that he "could probably benefit from more," and that it is covered under his insurance plan. Although he was "reluctant to self-diagnose," he also conceded that he still struggles from depression. Though we previously considered Marks's depression to be a mitigating factor when he was undergoing treatment, *see Marks I*, 759 N.W.2d at 332, we consider *untreated* chronic depression to be an aggravating factor, *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 13 (Iowa 2012) (finding attorney's criminal history, history of alcohol abuse and untreated chronic depression constituted aggravating factors).

Some factors militate in favor of mitigation, however. Marks notes that his lack of diligence did not harm the estate. We consider lack of harm to be a significant mitigating factor. *Van Ginkel*, 809 N.W.2d at 110. Additionally, Marks volunteers at his children's school, at church, and in the community. He has expended significant hours and effort in

the volunteer lawyers program for the Iowa State Bar. He has also worked with Legal Aid to establish a program to help people who are facing foreclosure. He assisted in establishing a continuing legal education program to educate attorneys on defending foreclosures. We consider as a "significant mitigating factor . . . [an attorney's] admirable record of volunteer community service . . . and his extensive pro bono practice." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012). Marks's "reputation as a lawyer should have some bearing on our sanction." *See Van Ginkel*, 809 N.W.2d at 110.

Marks argues convincingly that he can avoid future problems similar to this one if he stops practicing in probate law, an area which he apparently dislikes, causing him to procrastinate and miss deadlines. We have previously imposed restrictions on attorneys regarding the practice of probate law. *E.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Neary*, 731 N.W.2d 386, 388 (Iowa 2007) (imposing the condition that if the attorney is "reinstated, [he] shall not engage in probate matters pending further order of this court unless he associates with an experienced lawyer approved by the chief judge of the Eighth Judicial District"); *Comm. on Prof'l Ethics & Conduct v. Pracht*, 505 N.W.2d 196, 199–200 (Iowa 1993) (requiring attorney's assurance that he would not handle probate matters again unless he either associated with a lawyer experienced in probate, or secured our permission after demonstrating proficiency in probate law).

Such orders, however, are difficult to oversee and enforce. In *Pracht*, an attorney was disciplined after violating our order to not practice probate law without associating with a lawyer experienced in probate. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht*, 656 N.W.2d 123, 125 (Iowa 2003). In *Lickiss*, we specifically declined to

adopt a restriction on the practice of probate matters because "neither the court nor the bar has effective machinery in place for . . . supervision of such requirements." 786 N.W.2d at 871–72 (citation and internal quotation marks omitted).

We decline to adopt such a restriction here. Nevertheless, we strongly suggest that Marks consider voluntarily electing to discontinue his probate practice entirely, should he be reinstated following his suspension.

## V. Disposition.

Upon our de novo review, and for the reasons set forth above, we suspend the license of Samuel Zachary Marks to practice law in this state for three months from the date of filing this opinion. The suspension applies to all facets of the practice of law, as provided in Iowa Court Rule 35.13(3) and requires notification to clients, as outlined in rule 35.23.

Upon application for reinstatement, Marks must demonstrate that he has not practiced law during the period of his suspension and that he has complied with all of the requirements for reinstatement provided in rule 35.14. Prior to any reinstatement, Marks must provide an evaluation from a licensed health care professional verifying his fitness to practice law. The costs of this proceeding are assessed against Marks pursuant to rule 35.27(1). Reinstatement shall not be ordered until all costs are paid. Iowa Ct. R. 35.27(3).

**LICENSE SUSPENDED.**