# IN THE SUPREME COURT OF IOWA

No. 19–0249

Filed May 3, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**DONALD H. CAPOTOSTO,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In this attorney disciplinary action, the grievance commission recommends a sixty-day suspension. **LICENSE SUSPENDED.**

Tara van Brederode and Amanda K. Robinson, Des Moines, for complainant.

John D. Brown, Emmetsburg, and Donald H. Capotosto, West Bend, pro se, for respondent.

**CADY, Chief Justice.**

This case is before us on review from a report and recommendation of a division of the Iowa Supreme Court Grievance Commission concerning attorney Donald Capotosto. The report found Capotosto committed ethical violations and recommended he be suspended from the practice of law for sixty days. We find Capotosto violated the Iowa Rules of Professional Conduct by neglecting several probate cases. We suspend his license to practice law in Iowa for sixty days.

## I. Background Facts and Proceedings.

Donald Capotosto is an Iowa attorney admitted to practice law in 1973. He resides and maintains a private practice in West Bend, Iowa. In addition to his private practice, he regularly accepts court-appointed criminal and juvenile cases. This disciplinary proceeding involves Capotosto's conduct in handling several probate cases and his failure to cure numerous delinquencies.

On December 21, 2018, Capotosto and the Iowa Supreme Court Attorney Disciplinary Board jointly filed a stipulation of facts and rule violations. Capotosto stipulated that he allowed six probate estates to become delinquent and violated Iowa Rules of Professional Conduct 32:1.3; 32:1.4(a)(3), (4); and 32:8.4(d). The parties also stipulated that Capotosto entered into a deferral agreement (the Agreement) on March 14, 2018.

Pursuant to the Agreement, Capotosto was required to remedy all delinquencies by June 1, 2018, or, alternatively, withdraw from the cases. The terms of the Agreement also required Capotosto to complete six hours of continuing legal education in the area of probate law and submit quarterly reports to the Board documenting his compliance with the conditions. The Agreement prohibited Capotosto from commencing

probate work on estates for which he was not already the attorney of record. Capotosto acknowledged that failure to meet the conditions of the Agreement would result in disciplinary actions against him.

Capotosto failed to comply with the requirements of the Agreement. He did not cure or withdraw from the already delinquent probate estates. Moreover, Capotosto opened additional probate estates, causing the number of delinquent cases to increase from five to twelve by the time of the grievance commission hearing. He also failed to file quarterly reports as required under the Agreement.

Capotosto has been previously subjected to disciplinary action. In January 2015, he was publicly reprimanded for allowing several probate estates to become delinquent. In January 2016, he was temporarily suspended for failing to respond to a complaint from the Board.

## II.  Board Complaint and Commission Grievance Report.

Following Capotosto's failure to comply with the Agreement's terms, the Board recommended a minimum sanction of a six-month license suspension. It further recommended that Capotosto be barred from handling probate cases in the future.

The commission found Capotosto violated the rules set forth in the stipulation. It also identified numerous aggravating factors, including failing to cure delinquencies, failing to withdraw from the cases, opening of new estates, and receiving new notices of delinquency; a public reprimand in 2015; a temporary suspension in 2016; and the absence of a succession plan. It also recognized several mitigating circumstances, including letters of support and his willingness to accept court-appointed cases. It also observed that he completed substantial work on all of the cases. Ultimately, the commission concluded Capotosto should receive a sixty-day suspension.

### III.  Standard of Review.

We review attorney disciplinary proceedings de novo.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 913 (Iowa 2011).  While we are not bound by the commission's findings and recommendations, we do give them respectful consideration.  *Id.*  The Board must prove the misconduct by a convincing preponderance of the evidence.  *Id.*

### IV.  Violation.

**A.  Rule 32:1.3.**  Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."  Iowa R. Prof'l Conduct 32:1.3.  Typically, an attorney does not violate the rule by missing one deadline.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012).  Instead, an ethical violation "arises when a lawyer 'repeatedly fail[s] to perform required functions as attorney for the executor, repeatedly fail[s] to meet deadlines, and fail[s] to close the estate within a reasonable period of time.' "  *Id.* (alterations in original) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002)).  We have previously found that attorneys violate this rule when they fail to close a probate estate and receiving multiple delinquencies.  *See Van Ginkel*, 809 N.W.2d at 102 (finding an "obvious" violation based on attorney's "consistent failure" to perform duties resulting in multiple delinquencies in one estate case); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010) (holding the attorney's failure to cure multiple delinquencies in multiple cases resulted in a rule 32:1.3 violation).

In this case, the commission found Capotosto was negligent, and his conduct resulted in multiple delinquencies across multiple estate

cases. Throughout this action, the number of delinquent cases rose from five to nine and finally to twelve by the time of the commission's hearing. At least one estate from the reprimand in 2015 remains open and delinquent. Clearly, Capotosto's actions demonstrate a consistent and continuous pattern of neglect. Even though many of the estates were close to completion, Capotosto still failed to act with reasonable diligence and promptness by not completing his tasks. For these reasons, we find Capotosto violated rule 32:1.3.

**B. Rule 32:1.4.** Rule 32:1.4 sets forth the expectations of lawyers in their communications with clients. Subsection (a)(3) provides that "[a] lawyer shall . . . keep the client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(3). Further, subsection (a)(4) states that "[a] lawyer shall . . . promptly comply with reasonable requests for information." *Id.* r. 32:1.4(a)(4).

We have concluded attorneys violate both subsections (a)(3) and (a)(4) by failing to keep their clients informed about the status of their case and neglecting to respond to client inquiries. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ryan*, 863 N.W.2d 20, 26 (Iowa 2015); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 537–38 (Iowa 2013) (concluding attorney violated rule 32:1.4(a) because he did not properly notify clients of court dates and was inaccessible and unresponsive to inquiring clients). Thus, an attorney's failure to communicate may violate both his duty to provide clients with information and his duty to respond promptly to a request.

Capotosto admitted that in some instances he did not adequately communicate with clients about the status of their case and failed to respond to their requests for information. Accordingly, we find respondent violated rules 32:1.4(a)(3) and 32:1.4(a)(4).

**C. Rule 32:8.4(d).** Rule 32:8.4 provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). Acts are considered prejudicial when they violate "the well-understood norms and conventions of the practice of law," *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stansberry*, 922 N.W.2d 591, 597 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)), hindering the efficiency and operation of our court system.

We have consistently held an attorney's misconduct causing prolonged or additional court proceedings violates this rule. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013). For example, in *Van Ginkel*, we noted the attorney's multiyear procrastination resulted in "issuing orders, extending deadlines, and cleaning up the probate proceedings." 809 N.W.2d at 103. This unnecessary expenditure of "valuable judicial and staff resources" violated rule 32:8.4(d). *Id.*

Similarly, Capotosto's continued negligence needlessly expended judicial resources. The Board's brief on the issue of sanctions cited thirty-eight delinquencies between six probate estates. The issuance of delinquency notices, particularly at this volume, is an unnecessary expenditure of valuable judicial time.

In an attempt to encourage Capotosto to rectify the delinquencies, the parties entered into the Agreement. He did not comply with any of its terms. The formation of the Agreement, as well as the Board and commission's intervention, also constitute the use of judicial resources. Accordingly, we find Capotosto's sustained negligence in his numerous probate cases hindered the efficiency of our judicial system in violation of rule 32:8.4(d).

**V. Sanctions.**

"There is no standard sanction for particular types of misconduct." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013). While prior cases are instructive, "we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007). The commission recommended a sixty-day suspension for Capotosto's transgression, a lesser sanction than the Board's six-month recommendation. We must now decide the appropriate course of disciplinary action.

**A. Neglect.** "Prolonged inattention to probate matters undermines the public's confidence in the legal profession and is contrary to the foregoing canons of professional responsibility." *Comm. on Prof'l Ethics & Conduct v. Haney*, 435 N.W.2d 742, 743 (Iowa 1989). Generally, sanctions for attorney misconduct involving neglect have ranged from a public reprimand to a six-month license suspension. *Lickiss*, 786 N.W.2d at 868. Normally, probate neglect cases that warrant "sanctions on the high end of the spectrum are accompanied by various aggravating factors." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ochs*, 804 N.W.2d 720, 722 (Iowa 2011). These aggravating factors may include "multiple instances of neglect, other past disciplinary action, and companion violations such as dishonesty to clients and the court, failure to cooperate with the Board's investigation, and mishandling client funds." *Id.*

In *Ochs*, a disciplinary case involving an attorney's neglect, we imposed a thirty-day suspension. *Id.* at 723. Our analysis centered almost entirely on the prolonged failure by the attorney to rectify ten delinquent cases. *Id.* at 722. We noted the case did "not involve

aggravating circumstances such as misrepresentation or violations of court orders found in many neglect cases in which we have imposed lengthy suspensions." *Id.*

Capotosto suggests that the sanction in this case should be similar to *Ochs,* considering the sheer number of estates involved in the matter. He compares his twelve delinquent estate cases to the ten cases in Ochs.[1]  Based on the number of neglect cases, it may appear that Capotosto should receive a similar sanction to that handed down to Ochs.  However, this case is different from *Ochs,* in which our primary consideration was the mere neglect of multiple cases.  Although Capotosto's case does not involve serious aggravating factors, such as misrepresentation or premature fee collections, there are other factors that warrant a lengthier sanction.

**B. Prior Reprimand.**  "Prior discipline is another aggravating factor we consider in determining the appropriate sanction."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey,* 814 N.W.2d 250, 258 (Iowa 2012); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal,* 841 N.W.2d 114, 127 (Iowa 2013).  Prior misconduct is particularly relevant when an attorney commits conduct in a client matter after already being disciplined in that matter.  *See Dolezal,* 841 N.W.2d at 128. That is, "one would expect that the initial discipline . . . would have prompted the respondent to attend to his clients' legal matters." *Lickiss,* 786 N.W.2d at 869–70.

Prior to this action, Capotosto was subject to reprimand on two occasions.  He was publicly reprimanded in 2015 for his neglect of

---

[1]Capotosto originally argued he should receive a similar sanction to Ochs because he only had six neglected probate cases, compared to Ochs's mishandling of seven estates, two guardianships, and one conservatorship.  While the number of Capotosto's neglected cases was once less than Ochs's, it now exceeds it.

probate cases. In 2016, he was temporarily suspended for failing to respond to a Board complaint. One of the cases included in the 2015 reprimand is at issue in the present case. We consider these prior reprimands and regard the further neglect of an earlier case as an aggravating circumstance in this case.

**C. Other Aggravating Factors.** The commission identified Capotosto's failure to comply with the Agreement's terms as an aggravating circumstance. In *Committee on Professional Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981) (en banc), we examined an attorney's failure to fulfill his promise to timely complete probate matters. "[W]hile we do not imply such representations were deceitful, we deem the breach of them to be significant." *Id.*

Similarly, Capotosto's stipulation to the Agreement was a promise to perform tasks mandated by the Board. The Agreement required him to cure all delinquent cases, withdraw from the cases if he did not cure them, refrain from opening new cases, provide quarterly reports, and attend and complete six hours of CLE in the area of probate. Capotosto did not comply with any of these terms. This inaction, at the very least, demonstrates a disregard for the Board's authority. It further disadvantages the clients and beneficiaries who fell victim to Capotosto's neglect. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 723 N.W.2d 439, 442 (Iowa 2006) (stating harm to a client may also be considered an aggravating factor). Accordingly, we find Capotosto's failure to comply with the terms of the Agreement an aggravating factor.

**D. Mitigating Factors.** Our determination of the appropriate disciplinary action also includes consideration of mitigating factors. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 201 (Iowa 2013). The commission listed the following as mitigating factors:

letters written on Capotosto's behalf, his willingness to accept court-appointed cases, and the fact that he completed substantial work on most of the cases.

A judge and a county attorney submitted compelling letters on Capotosto's behalf. While neither were able to comment on his probate work, they held his professional abilities and his utility to the community in high regard. Significantly, the letters explained Capotosto's importance as one of few attorneys willing to accept court-appointed assignments in a five-county area.

> I would be hamstrung and hobbled in delivering justice and resolving my cases if Mr. Capotosto were prevented from serving as opposing counsel in Palo Alto County non-probate cases . . . . If he were prevented from acting as counsel in those counties (other than in probate matters) the judicial operations in these counties would be severely and adversely disturbed.

We find these declarations of Capotosto's value to the legal communities he serves to be significant. While Capotosto has violated multiple rules of professional conduct, he has also upheld our aim to "devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel." Iowa R. of Prof'l Conduct ch. 32 pmbl. [6]. This commitment is vital to our legal community and is worthy of our consideration.

Finally, the commission noted Capotosto has completed substantial work in all of the delinquent cases, needing only to send notices and obtain final orders. The commission characterized Capotosto's failure to complete these final tasks as a "mental block." We agree.

The letters submitted on Capotosto's behalf and his willingness to accept court appointments demonstrate his competency, collegiality, and commitment to Iowa's legal community. Yet, he has been incapable of completing his clients' probate matters, despite entering into the Agreement and threats of reprimand. His neglect of the probate cases is not indicative of his general ability to perform as a zealous advocate in other matters, but it remains a potential impediment to his ability to practice law successfully in the future.

Upon consideration of the commission's findings and facts of this case, we conclude a sixty-day suspension of respondent's license to practice law is the appropriate sanction. This sanction conforms to the recommendation of the commission and is consistent with our prior cases.

**VI. Disposition.**

We suspend the license of Donald H. Capotosto to practice law in this state for sixty days from the filing of this opinion. This suspension shall apply to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Capotosto shall comply with all requirements of the court rules associated with his suspension. *See id.* rs. 34.23(2)–(4), .24(1)–(2). The costs of this proceeding are assessed against Capotosto. *Id.* r. 36.24(1).

**LICENSE SUSPENDED.**