# IN THE SUPREME COURT OF IOWA

No. 19–1740

Filed February 14, 2020

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**DUANE J. GOEDKEN,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends suspension for multiple violations of ethical rules. **LICENSE SUSPENDED.**

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Duane J. Goedken, Muscatine, pro se.

**WIGGINS, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (the Board) brought a complaint against an attorney arising out of several delinquencies in probate matters. The attorney was delinquent in filing reports for five estates and one trust. He also failed to respond to the Board's complaint and failed to cooperate with the Board's investigation of his violations. The Iowa Supreme Court Grievance Commission (the commission) found the attorney's conduct violated our ethical rules.

The commission recommended we suspend the attorney's license to practice law for ninety days. On our de novo review, we agree that the attorney violated our ethical rules and agree with the commission's recommended suspension.

Therefore, we suspend the attorney's law license indefinitely with no possibility of reinstatement for ninety days.

### I. Standard of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Capotosto*, 927 N.W.2d 585, 587 (Iowa 2019). "The Board must prove the misconduct by a convincing preponderance of the evidence." *Id.* "A convincing preponderance of the evidence is more than the typical preponderance standard in a civil case but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 522 (Iowa 2017). We give respectful consideration to the commission's findings but we are not bound by them. *Id.*

### II. Findings of Fact.

We find the facts as follows. We admitted attorney Duane J. Goedken to practice law in Iowa in 1963. Goedken practices law in Muscatine County. In the course of his practice, Goedken has represented

business entities and a large utility, as well as parties in various estates and trusts.

Goedken experienced serious health problems in the later years of his career. He had escalating heart problems until, around January 21, 2014, Goedken had a heart attack that left him hospitalized for fifteen days. After he recovered from the heart attack, his doctor kept him on many medications, including blood thinners. This proved an issue when, in 2017, Goedken began experiencing problems with his vision. By late 2017, he was unable to read his computer screen. Goedken's eye doctors recommended surgery. However, the eye surgeon refused to perform the surgery while Goedken was on blood thinners, due to the bleeding risk. Because taking Goedken off the blood thinners risked causing a stroke, Goedken's doctor was forced to find a surgeon willing to operate while Goedken was on blood thinners. The surgeon performed the operation on May 9, 2018. Goedken's vision was slow to improve, but by fall of 2018, Goedken could read computer screens well enough to get by again.

Tragedy stuck Goedken around this time. In 2018, Goedken's eldest daughter, who lived in Arizona, was diagnosed with breast cancer. Despite undergoing treatment, the daughter's cancer rapidly spread to other organs until she eventually checked herself into hospice care in December 2018. Goedken and his wife planned to go to Arizona to be with her, but Goedken wanted to finish his work first. However, Goedken's daughter's cancer was aggressive, and she passed away around one week after checking herself into hospice care.

Many, but not all, of the delinquencies in this case arose during or between Goedken's vision problems and the death of his daughter. The current complaint arose out of Goedken's trust and estate representation. He received delinquencies in five estates and one trust.

**A. Count I: Wathan Trust.** Count I of the commission's report concerns the Wathan trust. Goedken's involvement in the Wathan trust dates back to 1986. In 1986, Grace Wathan filed an application to appoint a trustee to the Cecil Wathan Residuary Trust after the death of her husband, Cecil Wathan. Goedken represented the trustee, Blue Grass Savings Bank.

After the first trustee's report was approved on April 6, 1994, the district court waived further reports to March 31, 1997. However, Goedken did not file the trustee report and the clerk of court sent a delinquency notice October 26, 1999. Goedken filed the report December 30, 1999. The district court again waived further reports, this time until March 31, 2002. Goedken filed this report April 16, 2002. The next report was due March 31, 2007. Once again, Goedken failed to file the report on time, and the clerk of court sent him a delinquency notice on June 5, 2007. Goedken filed the report August 1, 2007. The next report was due March 31, 2012. On November 29, 2012, the clerk of court sent Goedken another delinquency notice. He filed the report February 1, 2013, and the next report was due March 31, 2017. On December 1, 2017, the clerk of court sent Goedken another delinquency notice. Goedken filed the trustee's report March 14, 2018. After scheduling and cancelling hearings to explain the delay in the filing and to address Goedken's suspension, the district court approved the report on April 24. In total, Goedken received four delinquency notices in the Wathan trust.

In May 2019, Grace Wathan passed away. The Wathan trust's assets go to Wathan's children. Another attorney, Steve Kundel, is handling Wathan's estate.

**B. Count II: Milder Estate.** Goedken also represented Timothy J. Dickerson as the executor of Phyllis D. Milder's estate. Dickerson

petitioned to probate Milder's will on March 22, 2017, and the district court appointed Dickerson executor and Goedken as Dickerson's attorney.

After Goedken failed to file the inventory report, the clerk of court sent him a delinquency notice on December 1. Goedken filed the inventory report February 2, 2018. However, the clerk of court again issued Goedken a delinquency notice December 1, 2018, this time for failure to file an interlocutory report. On April 25, 2019, Kundel filed an appearance in the case and Dickerson filed his interlocutory report. On July 15, the day before the commission hearing, Goedken withdrew from the Milder estate.

**C. Count III: Price Estate.** Michael D. Price petitioned to probate Ralph E. Price's estate on June 8, 2017. The district court appointed Price as executor and Price designated Goedken as his attorney in the matter. When Goedken failed to file the inventory report, the clerk of court sent him a delinquency notice on December 1.

The estate was still delinquent March 20, 2018, so the district court set a hearing for May 4, directing Price and Goedken "to show cause as to why they should not be removed or held in contempt." Neither Price nor Goedken attended this hearing. The court rescheduled the hearing for May 24 and ordered Price and Goedken to appear. On May 8, the Muscatine County sheriff served Goedken with the court's order. The next day, Goedken had eye surgery.

Goedken and Price attended the May 24 hearing, and Goedken explained his vision issues, taking the blame for Price missing the hearing. The court ordered him to file the report within ten days. The next day, Goedken filed the inventory report. He filed the interlocutory report June 7.

On December 18, 2018, Goedken filed an interim final report, certifying the only thing left open in the estate was the filing of an Iowa tax return. Goedken did not complete the report because of amendments to the federal tax code. On December 20, the court held the estate would be held open until Goedken filed a supplemental report confirming the taxes had been taken care of and withheld $500 of Goedken's fee to reflect the incomplete work. In the meantime, on March 28, 2019, the court scheduled a hearing for April 25 to address our suspension of Goedken's license for failing to respond to the Board. On April 23, after we reinstated his license, Goedken filed the supplemental report and the court closed the Price estate and cancelled the April 25 hearing.

**D. Count IV: Briggs Estate.** Deborah S. McNamara and Donald D. Briggs petitioned the court to probate the will of Dorothy A. Briggs and applied to be coexecutors on June 14, 2017. When they were appointed, they designated Goedken as their attorney of record.

On December 1, the clerk of court issued a delinquency to Goedken for failure to file the inventory report. Goedken filed the inventory report December 12. On December 10, 2018, Goedken filed an interim final report pending tax clearance. On December 31, the court approved the interim final report and held the estate open, reserving $1000 of Goedken's payment for when Goedken filed a supplemental report confirming the taxes had been taken care of. In the meantime, on March 28, 2019, the court scheduled a hearing for April 25 to address our suspension of Goedken's license. On April 22, Goedken filed the tax certificate, and on April 23, he filed two supplemental reports. The court closed the Briggs estate on April 23 and cancelled the April 25 hearing.

**E. Count V: Manatt Estate.** On July 9, 2017, Sue A. Cox petitioned to probate the will of Mona I. Manatt and become executor in

the Manatt estate. Cox designated Goedken as her representative in the matter.

On December 1,[1] the clerk of court issued a delinquency notice because Goedken failed to file the inventory report. When the estate was still delinquent on March 20, 2018, the court scheduled a hearing for May 4, for Cox and Goedken "to show cause as to why they should not be removed or held in contempt." Neither attended. After the Muscatine County sheriff personally served Goedken and after his eye surgery, Goedken appeared before the district court.[2]

The court ordered Goedken to file the inventory and an interlocutory report by June 8, 2018. Goedken filed the inventory on May 25. He filed an interlocutory report on June 5, reporting the impediments to closing the estate had been removed. On March 28, 2019, the district court scheduled a hearing on the issue of Goedken's suspended law license. However, on April 25, the court continued the hearing to July 25. On July 15, Goedken filed a final report and accounting, though he admitted before the commission that the estate became more complicated after his June 5 report. Attorney Gregory A. Johnston has since filed an appearance in the Manatt estate, and Goedken has withdrawn.

**F. Count VI: Lechner Estate.** On June 18, 2018, Michael C. Wilson petitioned to probate Elizabeth F. Lechner's estate and have an executor appointed. The court appointed First National Bank of Muscatine as executor, and the bank designated Goedken as the attorney in the estate.

---

[1]Goedken thus received four delinquency notices on December 1, 2017.

[2]The scheduled Cox hearings overlapped with the scheduled Price hearings and were before the same district court judge.

On December 1, 2018, the clerk of court issued Goedken a delinquency notice for failure to file the inventory report. Goedken filed the inventory report January 22, 2019. On April 8, 2019, attorney Kundel appeared on behalf of the bank. The court ordered Goedken withdrawn from the case on May 2, 2019.

**G. Count VII: Response to Delinquency Notices.** After Goedken failed to cure the delinquencies in the Wathan trust, Milder estate, Price estate, and Manatt estate, on April 17, 2018, the Board mailed Goedken letters giving him thirty days to certify he had cured the delinquencies. The Board explained it would take no further actions if the delinquencies were cured, but it would open a formal complaint against Goedken if he did not cure the delinquencies.

When Goedken failed to cure the delinquencies, the Board opened a complaint against him under Iowa Court Rule 35.6. The Board sent Goedken a letter explaining the situation on July 23, and Goedken acknowledged receipt of that letter on July 26. However, Goedken did not respond to the Board's complaint.

On August 17, the Board sent Goedken a second letter notifying him a complaint had been opened against him. He acknowledged receipt of the letter on August 24 but again failed to respond to the Board.

Due to Goedken's failure to respond, on December 27, the Board filed a certificate with this court under Iowa Court Rule 35.7(3). On January 2, 2019, the clerk of our court notified Goedken we would suspend his license if the certificate the Board filed was not withdrawn within twenty days. Goedken acknowledged receipt of this notice on January 4.

Still, Goedken did not respond. Therefore, we suspended Goedken's license on January 30. Goedken acknowledged receipt of the suspension

order February 4. Our order informed Goedken of his obligation to comply with the notification provisions of Iowa Court Rule 34.24, requiring him to notify his clients of his suspension and advise them to seek legal advice elsewhere. However, he did not inform his clients of his suspension or withdraw from their cases at this time.

Finally, on April 9, Goedken responded to the Board's complaint. The Board withdrew its certificate, and Goedken paid the reinstatement fee. We reinstated Goedken's law license on April 10.

### III. Violations.

The Board alleged, and the commission found, that Goedken violated six of the Iowa Rules of Professional Conduct. First, the commission found Goedken violated Iowa Rule of Professional Conduct 32:1.3, diligence, in his handling of the trust and estates listed above. The commission also found Goedken violated several rules with respect to his uncooperative behavior and suspension. Those violations include rule 32:1.4(a)(3), keeping the client reasonably informed; rule 32:1.16(a)(1), withdrawing from the representation; rule 32:1.16(d), protecting the client's interests; and rule 32:8.1(b), knowingly failing to respond. Finally, the commission found Goedken violated rule 32:8.4(d), conduct prejudicial to the administration of justice, both in his dilatory handling of the trust and estates and in his failure to cooperate with the Board.

Although Goedken's failure to answer the Board's complaint made "the facts alleged . . . properly deemed admitted, we nonetheless conduct an independent review of [his] alleged ethical violations." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey*, 814 N.W.2d 250, 257 (Iowa 2012).

**A. Rule 32:1.3: Diligence.** Iowa Rule of Professional Conduct 32:1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." In the probate context, an attorney

does not typically violate rule 32:1.3 by missing one deadline or receiving one delinquency notice. *Capotosto*, 927 N.W.2d at 588. However, repeated failures "to perform required functions as attorney for the executor," meet deadlines, and close the estate within a reasonable time can amount to a violation of the rule. *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012)). Receipt of multiple delinquencies can result in violation of this rule. *Id.* Neglect of the type that violates rule 32:1.3 "involves 'a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client.' " *Van Ginkel*, 809 N.W.2d at 102 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010)). We have held that failure to appear at a scheduled hearing violates rule 32:1.3. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 208 (Iowa 2016).

This case arose from Goedken receiving a total of nine delinquency notices. Goedken failed to file interlocutory reports in multiple cases and received four delinquency notices in the Wathan trust alone. This record of delinquencies demonstrates Goedken's consistent failure to perform his obligations. Goedken also failed to appear at two scheduled court hearings and had to be personally served by the sheriff to ensure his attendance when those hearings were rescheduled.

Moreover, Goedken's attitude toward his delinquencies, displayed in his hearing before the commission, showed he had a conscious disregard for our probate rules. When questioned about the delinquencies, Goedken expressed that he does not "attend to details very much" and had "better things to do with [his] time than interlocutory reports." Goedken went on to explain that he has difficulty adhering to "the standards that other people set for [him], which [he does not] see any sense for," and noted that

he also practices in Illinois, which does not require the same deadlines in handling estates. He further referred to requests that he file required reports as "silly requests." Accordingly, we find Goedken violated rule 32:1.3 by his dilatory handling of the Wathan trust and the five estates.

**B. Rule 32:1.4(a)(3): Keeping the Client Reasonably Informed, Rule 32:1.16(a)(1): Withdrawing from the Representation, and Rule 32:1.16(d): Protecting the Client's Interests.** The commission next found Goedken violated three interrelated rules when his law license was suspended. The commission found Goedken violated rule 32:1.4(a)(3) by failing to inform his clients of his suspension and rule 32:1.16(a)(1) by failing to withdraw despite his suspended license, thereby not protecting his client's interests in violation of rule 32:1.16(d).

Rule 32:1.4(a)(3) says "[a] lawyer shall . . . keep the client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(3). We ordinarily find violations of rule 32:1.4(a)(3) when an attorney fails to respond to client inquiries or update the client about required hearings. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 145 (Iowa 2018); *Weiland*, 885 N.W.2d at 209. Here, Goedken failed to inform two clients, Price and Cox, about hearings that were held to determine why reports in those matters were delinquent. Goedken's failure to inform his clients Cox and Price of hearings in their cases violated this rule.

Additionally, comment 3 to rule 32:1.4 explains paragraph (a)(3) "requires that the lawyer keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation." Iowa R. Prof'l Conduct 32:1.4 cmt. [3]. In *Iowa Supreme Court Attorney Disciplinary Board v. Earley*, we found attorney Brian Earley violated, *inter alia*, rule 32:1.4(a)(3) by failing to

inform his clients when his law license was suspended. 774 N.W.2d 301, 308 (Iowa 2009). Moreover, the timing and substance of representation are undoubtedly affected by a lawyer's law license being suspended. Thus, we find Goedken's failure to inform his clients of his suspension violates rule 32:1.4(a)(3).

Rule 32:1.16(a)(1) says a lawyer "shall withdraw" from representing a client when "the representation will result in violation of the Iowa Rules of Professional Conduct or other law." Iowa R. Prof'l Conduct 32:1.16(a)(1). We have found that "a lawyer's representation of a client after suspension" violates rule 32:1.16(a)(1). *McCuskey*, 814 N.W.2d at 255. Despite his suspension, Goedken continued to attempt to represent his clients, even commenting that his loss of access to EDMS caused him problems. Without a valid license, this representation was in contravention of the Iowa Rules of Professional Conduct. Thus, Goedken violated rule 32:1.16(a)(1).

Finally, the commission found Goedken violated rule 32:1.16(d) by violating rules 32:1.4(a)(3) and 32:1.16(a)(1) and not informing his clients his law license had been suspended. Rule 32:1.16(d) requires a lawyer,

> [u]pon termination of representation, . . . [to] take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred.

Iowa R. Prof'l Conduct 32:1.16(d). In *Earley,* we found attorney Earley violated rule 32:1.16(d) when he failed to inform his clients of his suspension. 774 N.W.2d at 308. Like Earley, Goedken did not inform his clients that his law license was suspended. Accordingly, Goedken violated rule 32:1.16(d).

**C. Rule 32:8.1(b): Knowingly Failing to Respond.** The commission next found Goedken violated rule 32:8.1(b) by failing to respond to the Board's inquiries. Rule 32:8.1(b) requires "a lawyer . . . in connection with a disciplinary matter" to not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(b). "We can infer an attorney's knowing failure to respond to the demand for information when there is proof the attorney received the Board's inquiries but still did not provide the information sought." *Turner*, 918 N.W.2d at 150. Goedken received multiple letters from the Board, all acknowledged received, but failed to respond to any of the Board's complaints until after his law license was suspended. He admitted he chose not to open the Board's letters because they upset him. Therefore, Goedken violated rule 32:8.1(b).

**D. Rule 32:8.4(d): Conduct Prejudicial to the Administration of Justice.** Finally, the commission found Goedken violated rule 32:8.4(d) by engaging in conduct prejudicial to the administration of justice. The commission found Goedken violated this rule both through his dilatory handling of the five estates and the Wathan trust and through his failure to cooperate with the Board throughout the complaint process.

Rule 32:8.4(d) states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). "There is no precise test for determining whether an attorney's conduct violates the rule." *Weiland*, 885 N.W.2d at 212. In general, acts that are prejudicial to the administration of justice "hamper[] the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Monroe*, 784 N.W.2d 784, 788 (Iowa 2010)). "We have consistently held an attorney's misconduct

causing prolonged or additional court proceedings violates this rule." *Capotosto*, 927 N.W.2d at 589. This is true because such proceedings waste "valuable judicial and staff resources." *Id.* (quoting *Van Ginkel*, 809 N.W.2d at 103).

1. *Violation of rule 32:8.4(d) due to neglect.* We have held receipt of repeated delinquency notices is conduct prejudicial to the administration of justice. *Id.* This rule forbids attorneys from using the clerk of court as a "private tickler system" to remind them to file required reports. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 699 (Iowa 2008); *accord Van Ginkel*, 809 N.W.2d at 103.

Here, the clerk of court was forced to issue nine delinquency notices to Goedken, and the district court wasted significant time attempting to schedule and hold hearings related to those delinquencies. Although some of those delinquency notices were issued during a time when mitigating factors were present in Goedken's life, the delinquency notices in the Wathan trust were sent prior to Goedken's heart attack, eye issues, and the death of his daughter. Indeed, the repeated delinquencies in the trust suggest Goedken was using the clerk of court as a "private tickler system." We therefore find Goedken's handling of the five estates and the Wathan trust was conduct prejudicial to the administration of justice in violation of rule 32:8.4(d).

2. *Violation of rule 32:8.4(d) by Goedken's lack of response to the Board's complaint.* Failure to timely respond to Board communications can result in a violation of rule 32:8.4(d). *West*, 901 N.W.2d at 525. When an attorney fails to respond to Board communication, the attorney wastes Board resources and time in pursuing a response from the attorney. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 200 (Iowa 2013).

In this case, Goedken received repeated notices from the Board, first a notice that if he did not cure the delinquencies in his cases a complaint would be opened, then the opening of the complaint, then a second notice that a complaint had been opened, and lastly a notice the Board had filed a certificate against him. Finally, we suspended Goedken's law license on January 30. Not until over two months after this suspension, April 9, did Goedken finally respond to the Board. We find this conduct was prejudicial to the administration of justice, in violation of rule 32:8.4(d).

## IV. Sanction.

We have no standard sanction for types of attorney misconduct. *Capotosto*, 927 N.W.2d at 589. We determine what sanction is appropriate based on the facts of each individual case. *Id.*

> When fashioning a sanction, we examine several factors, including "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 497 (Iowa 2010) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002)). We consider both aggravating and mitigating factors to determine the appropriate sanction. *West*, 901 N.W.2d at 526. The commission recommended a ninety-day suspension for Goedken's misconduct. However, we have the discretion to impose a greater or lesser sanction. *Id.*

**A. Aggravating and Mitigating Factors.** The commission found several aggravating factors in Goedken's conduct. Those factors included Goedken's history of prior discipline, lengthy experience with the practice of law, and multiple violations of the same type. On our de novo review, we find these factors, as well as Goedken's attitude toward and failure to

cooperate with the Board and his continued practice of law despite his suspension, are aggravating factors.

Prior admonitions are considered an aggravating factor. *Id.* at 528. This factor is even stronger when those prior actions involved the same cases or subject matter as the present action because they put the attorney "on notice of his [or her] ethical requirements." *Id.* Even "somewhat dated" prior reprimands can be considered an aggravating factor. *Van Ginkel,* 809 N.W.2d at 110. However, "for prior discipline to qualify as an aggravating factor, we must have disciplined an attorney before he or she commits the subsequent act." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel,* 933 N.W.2d 190, 205 (Iowa 2019).

Goedken received a public reprimand in 1986 for probate delinquencies. The Committee on Professional Ethics and Conduct privately admonished Goedken in 1987 and 1988 for probate delinquencies as well. Finally, Goedken received a public reprimand in October 2018 for delinquencies in his handling of two estates between 2015 and 2017. However, the 2018 reprimand occurred after many of the relevant delinquencies in this case. That reprimand is only properly considered an aggravating factor in those delinquencies that arose after October 2018. Yet, the reprimands in 1986, 1987, and 1988 are properly considered an aggravating factor in our determination of the appropriate sanction.

Multiple instances of the same type of neglect constitute another aggravating factor. *Capotosto,* 927 N.W.2d at 589. The clerk of court issued Goedken delinquencies in six separate cases. These six instances of the same or substantially similar neglectful conduct represent an aggravating factor in our analysis.

We also consider experience in the practice of law to be an aggravating factor. *West*, 901 N.W.2d at 528. Goedken has been practicing law for over fifty-six years. Thus, Goedken's lengthy experience represents an aggravating factor.

Additionally, failure to cooperate with and a dismissive attitude toward the Board can be an aggravating factor. *Turner*, 918 N.W.2d at 154–55. Goedken waited until after his license was suspended by this court to finally respond to the Board. Goedken's failure to cooperate with the Board is properly considered an aggravating factor. Moreover, Goedken's conduct before the commission included a failure to acknowledge wrongdoing. He excused the delinquencies by saying he does not "attend to details very much" and had "better things to do with [his] time than interlocutory reports." He admitted he did not "see any sense for" Iowa's probate rules. He referred the delinquency notices and requests that he file required probate reports as "silly requests" and spoke flippantly about attorney withdrawal rules, dismissing them as "your [(the commission's)] rules" rather than rules he must be familiar with and abide by.

Finally, continued practice of law with a suspended license is an aggravating factor, apart from itself being a violation of rule 32:1.16(a)(1). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crotty*, 891 N.W.2d 455, 467–68 (Iowa 2017). Despite being suspended, Goedken continued to work on the estates in issue here and even told the commission that losing access to EDMS slowed him down.

The commission also noted certain mitigating factors, among them Goedken's vision problems, personal matters, lack of apparent harm to his clients, and lack of dishonest or selfish motive. On our do novo review, we

agree these factors mitigate Goedken's conduct, alongside the work Goedken completed in the cases.

We consider health issues to be a mitigating factor in determining the appropriate sanction. *West*, 901 N.W.2d at 527. Thus, Goedken's vision difficulties, making using a computer a near impossibility, and his heart complications constitute a mitigating factor. Additionally, although personal issues do not excuse ethical violations, they can be considered a mitigating factor. *Van Ginkel*, 809 N.W.2d at 110. Moreover, "personal stress may relate directly to neglect." *Id.* It is evident Goedken's daughter's illness and death impacted Goedken's legal practice in late 2018. Lack of harm to clients "is a significant mitigating factor." *Id.* There is no evidence in this record suggesting harm came to Goedken's clients due to his neglect of their matters. Substantial work completed can also be a mitigating factor. *Capotosto*, 927 N.W.2d at 590–91. Goedken ultimately managed to close three of the relevant estates and has withdrawn from the others. Finally, lack of selfish motive or desire for pecuniary gain is a mitigating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 528 (Iowa 2012). Like the commission, we find no evidence of a selfish motive in Goedken's conduct.

These mitigating factors are significant. Although Goedken allowed multiple delinquencies to occur across six cases, a majority of those delinquencies took place during a period when his vision had deteriorated to the point that he could not even read a computer screen. Moreover, it is apparent Goedken's failure to respond to the Board and degree of neglect were affected by both his health issues and his personal stresses. Finally, Goedken is eighty-one years old and is currently seeking to retire after a lengthy legal career. He has taken steps toward this retirement by closing

estates or withdrawing from matters. We find reasons such as protection of the public and deterrence less persuasive in this context.

**B. Appropriate Sanction.** When neglect is the primary form of misconduct an attorney engaged in, sanctions "have ranged from a public reprimand to a six-month license suspension." *Capotosto,* 927 N.W.2d at 589. In *Capotosto,* the attorney allowed six estates to become delinquent and subsequently entered into a deferral agreement with the Board wherein he was supposed to remedy all delinquencies or withdraw, participate in six hours of probate-related continuing legal education, and not begin work on any new probate cases. *Id.* at 587. He failed to follow the agreement; he did not cure the existing delinquencies or withdraw and, in fact, opened new estates, resulting in an increase of delinquent cases where he was the attorney of record from five to twelve. *Id.* We considered this course of conduct, as well as his prior reprimands, to be a significant aggravating factor. *Id.* at 590. However, we found Capotosto's important work in the community and substantial work done on the cases to be mitigating factors. *Id.* at 590–91. Based on the above, we suspended Capotosto's license for sixty days. *Id.* at 591.

Another case involving significant probate delinquencies was *Iowa Supreme Court Attorney Disciplinary Board v. Ochs*, 804 N.W.2d 720 (Iowa 2011). In that case, the attorney repeatedly missed deadlines in ten cases. *Id.* at 721. One of those cases resulted in a private reprimand from the Board. *Id.* However, "[d]uring the hearing on the complaint, Ochs was honest, contrite, and apologetic." *Id.* Additionally, *Ochs* did "not involve aggravating circumstances such as misrepresentation or violations of court orders found in many neglect cases in which we have imposed lengthy suspensions," but instead "center[ed] almost entirely on the abject failure of an attorney to comply with the basic structural rules governing

the processing of numerous probate cases over a prolonged period of time." *Id.* at 722. Based on these factors, we suspended Ochs's license for thirty days. *Id.* at 723.

Finally, in *Marks,* we considered the appropriate sanction for Samuel Zachary Marks. 831 N.W.2d at 196. Only one estate was involved, but nine delinquency notices had been issued. *Id.* Marks failed to respond to the Board's complaint against him. *Id.* at 196–97. Even though

> [t]he Board sent four separate communications regarding the matter to Marks over a period of eight months[,] Marks did not respond until two months after the fourth communication, promising to follow up within two weeks of that communication. He failed to follow up.

*Id.*

Marks also had a long and sordid history of being reprimanded and suspended. *Id.* at 197. Marks had appeared before this court on two separate occasions for disciplinary issues. *Id.* In 2009, we suspended Marks' license for thirty days for neglecting two probate estates, and in 2012, we issued a public reprimand for conduct occurring prior to 2009. *Id.* Marks was also suspended in 2006 and 2008 for failure to cooperate with the Board and was publicly reprimanded in 2007 for lack of diligence, incompetence, and failure to cooperate with the Board. *Id.* Based on these factors, we suspended Marks' license to practice law for three months. *Id.* at 202.

On our review of this case, we determine Goedken's conduct, coupled with the aggravating and mitigating factors, requires a ninety-day suspension. Unlike Ochs, Goedken's violations cover more than just a large number of delinquencies. A thirty-day suspension is too little. Although this case resembles *Capotosto,* where delinquent handling of estates was accompanied by failure to comply with the Board and a history

of prior reprimands, there are additional aggravating factors here. Particularly, Goedken's continued practice of law despite the suspension of his license and his flippant attitude toward the Board and the commission, similar to Marks' uncooperative behavior and long history of reprimands, justify a longer suspension.

## V. Disposition.

In light of the above considerations, we suspend Goedken's license to practice law in Iowa for an indefinite period with no possibility of reinstatement for ninety days from the date of filing this opinion. After ninety days, Goedken must apply for reinstatement if he wishes to continue to practice law. *See* Iowa Ct. R. 34.25. The suspension applies to all facets of the practice of law. *Id.* r. 34.23(3). Goedken shall comply with the notification requirements of Iowa Court Rule 34.24. We tax the costs of this action to Goedken in accordance with Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**

All justices concur except Waterman, J., who takes no part.